Stephen W. DOWLING, Plaintiff,

v.

UNITED STATES of America, Immigration Service, State Department, Department of Labor, National Hockey League and World Hockey League, Defendants.

Civ. A. No. 78–1122–C.

United States District Court,
D. Massachusetts.

Sept. 26, 1979.

MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which plaintiff seeks an award of damages against defendants National Hockey League (NHL) and World Hockey Association (WHA). Plaintiff also seeks declaratory and injunctive relief against the United States of America and three of its agencies, the Immigration and Naturalization Service, the State Department, and the Department of Labor. Plaintiff Stephen W. Dowling is a resident of Massachusetts and a United States citizen, who has at different times been employed as a referee by the NHL and the WHA. Defendant NHL is an entity composed of member clubs, one of which, the Boston Professional Hockey Association, Inc. (Bruins), is located and does business in this District. Defendant WHA is also composed of member clubs, one of which, the New England Whalers is located in and does business in this District. The jurisdiction of this Court is invoked under 28 U.S.C.A. §§ 1331, 1332, 1337, 1343(3), 1346, 1361, 2201, and 2202.

This matter is now before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed.R. Civ.P. 12(b)(6).

Taking the allegations of plaintiff's complaint as true for purposes of these motions, it appears that plaintiff was employed by the NHL as a referee during the 1972–73, 1973–74, and 1974–75 hockey seasons. After the 1974–75 season, plaintiff was released from the employ of the NHL. He was then employed as a referee by the WHA during the 1975–76 and 1976–77 hockey seasons. On or about July 1, 1977, plaintiff received a letter from the WHA indicating that a merger of the WHA and the NHL was close to completion and that, as a result, all WHA referees would not be tendered new contracts and would become free agents. The letter also stated that efforts were being made to secure employ-

William A. Brown, Brown & Delaney, Boston, Mass., for plaintiff.

Robert L. Caporale, Boston, Mass., for World Hockey Ass'n.

Bruce A. Singal, Asst. U.S.Atty., Boston, Mass., for Federal defendants.

Richard P. McElroy, Matthew J. Siembieda, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., James D. St. Clair, Thomas S. Grilk, Hale & Dorr, Boston, Mass., for Nat. Hockey League.

ment for WHA referees with the NHL. Plaintiff then applied to both the NHL and WHA for employment as a referee. On August 9, 1977, the proposed merger of the NHL and WHA fell through. Plaintiff received a letter from the NHL on August 11, 1977, rejecting his application for employment on the basis that there was no longer a need to expand the size of the league's officiating staff. On August 21, 1977, plaintiff received a letter from the WHA indicating that he would not be offered a contract since the number of league teams was being reduced from twelve to seven.

Plaintiff then commenced this action alleging that the NHL and WHA had conspired "to restrain the trade and deprive Plaintiff of his lawful right to employment and his rights as an American citizen." Plaintiff alleges that neither the NHL or the WHA presently employ United States citizens as referees and that they hire only Canadian referees. In essence, plaintiff contends that the two leagues conspired to deny him employment as a referee because of his United States citizenship. On this basis, plaintiff seeks damages for loss of employment, loss of salary, and loss of various other employment benefits.

Plaintiff further alleges that defendants Immigration and Naturalization Service, Department of Labor, and State Department have approved and issued nonimmigrant visas to Canadian referees on petitions submitted by defendants NHL and WHA "without full knowledge of the facts, in an arbitrary and capricious manner and contrary to the laws of the United States . . . .." Plaintiff seeks a declaration to this effect and an injunction preventing the federal defendants from granting visas to Canadian referees until such time as the federal agencies have had an opportunity to consider the impact which these visas have on plaintiff and other United States citizens who are hockey referees.

Defendants move to dismiss plaintiff's complaint on several grounds. First, defendants NHL and WHA argue that this Court lacks subject matter jurisdiction because plaintiff has no right of action, either express or implied, under the Immigration and Nationality Act, 8 U.S.C.A. § 1101, *et seq.* Second, the federal defendants claim that this Court lacks subject matter jurisdiction because plaintiff does not have standing under the Administrative Procedure Act, 5 U.S.C.A. § 701 *et seq.*, to challenge the agency action in this case. Third, the federal defendants contend that, regardless whether the plaintiff has standing under the APA, the decision whether to grant nonimmigrant visas has been committed by Congress to agency discretion by law and therefore is unreviewable. 5 U.S.C.A. § 701(a). Finally, defendants NHL and WHA argue that this Court should dismiss because plaintiff has failed to state a claim under the antitrust laws or the civil rights laws upon which relief can be granted.

■■■ Plaintiff first asks this Court to infer a private right of action under the Immigration and Nationality Act, 8 U.S.C.A. § 1101 *et seq.* Plaintiff relies primarily on 8 U.S.C.A. § 1101(a)(15)(H), which defines the term "nonimmigrant alien" as follows:

(H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country;

It is obvious that 8 U.S.C.A. § 1101(a)(15)(H) is merely a definitional section which cannot be construed to create a private right of action. Plaintiff also relies on 8 U.S.C.A. § 1184(c). That section assigns to the Attorney General, upon petition of the importing employer, the duty to decide whether nonimmigrant aliens should be granted visas. Section 1184(c) contemplates administration by the Attorney General, not private citizens, and it cannot be viewed as authorizing a private right of action. I therefore rule that plaintiff does

not have a private right of action under the Immigration and Nationality Act. In so doing, I note that the result I reach today is in accord with the rulings of the Courts of Appeals in the three other Circuits which have thus far considered this issue. *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926 (9th Cir. 1975); *Flores v. George Braun Packing Co.*, 482 F.2d 279, 280 (5th Cir. 1973); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893–94 (10th Cir. 1972), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972). Since plaintiff does not have a claim under the Immigration and Nationality Act, this Court is without subject matter jurisdiction and plaintiff's claims under the Act should be dismissed.

■ Plaintiff next contends that he has standing under the APA to challenge the agency action in granting non-immigrant visas to Canadian hockey referees. The APA confers standing to seek judicial review on those persons who are "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C.A. § 702. The Supreme Court has developed a two-pronged test to determine whether a plaintiff has the requisite standing under the APA. Under the first prong, which has its basis in the constitutional requirements of Art. III, a plaintiff must demonstrate that, in fact, he has suffered an injury which is fairly traceable to the challenged agency action and, further, that there is a substantial likelihood that the requested relief will remove the harm. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 44–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 504–05, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). But, as the Court noted in *Simon*, "unadorned speculation will not suffice to invoke the federal judicial power." 426 U.S. at 44, 96 S.Ct. at 1927. Under the second prong of the Court's APA standing test, which has its root in nonconstitutional, prudential notions, the plaintiff must show that the alleged injury was to an interest "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397

U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

■ Turning to the first prong of the standing analysis, I rule that the plaintiff has failed to meet the minimum requirements of Art. III. Any harm which plaintiff has suffered in this case stems from the refusal of the NHL and WHA to employ him as a hockey referee, not from the decision of agency defendants to grant nonimmigrant visas to Canadian referees. Moreover, I rule that nothing is alleged herein which shows a substantial likelihood that plaintiff would regain employment as a professional hockey referee if he were given the relief requested. Such an allegation, if made, would certainly fall within the realm of "unadorned speculation." Thus, plaintiff does not have standing to challenge the agency action in this case. *Texas State AFL–CIO v. Kennedy*, 117 U.S.App.D.C. 343, 345, 330 F.2d 217, 219 (D.C.Cir.), *cert. denied*, 379 U.S. 826, 85 S.Ct. 54, 13 L.Ed.2d 36 (1964). I therefore rule that this Court is without subject matter jurisdiction; all claims against the federal agency defendants should be dismissed.

I would add that, because I dispose of the standing issue on the constitutional ground, I express no opinion as to whether plaintiff satisfies the second or "zone of interests" prong of the standing analysis. Moreover, in view of my decision that plaintiff lacks standing, it is unnecessary to discuss the federal defendants' contention that the decision whether to issue nonimmigrant visas is committed to agency discretion by law and therefore unreviewable. I express no view on that matter.

I now turn to plaintiff's final claim that defendants NHL and WHA have conspired "to restrain the trade and deprive plaintiff of his lawful right to employment and his rights as an American citizen." While plaintiff's allegation is far from a model of legal clarity, it appears that plaintiff is resting his claim both on the antitrust laws and on the civil rights laws.

■ If plaintiff's claim is based on the antitrust laws, it is sorely lacking. In order

to state a claim under the antitrust laws, a plaintiff must allege with some definiteness the nature of the conspiracy to violate the antitrust laws, as well as the acts done in furtherance of that conspiracy. *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972); *Adams v. American Bar Association*, 400 F.Supp. 219, 223 (E.D.Pa.1975). The complaint in this case is not much more than a bare-bones allegation of conspiracy. As sole evidence of a conspiracy between the NHL and WHA, plaintiff points to a letter he received from the WHA on or about July 1, 1977, indicating that his contract would not be renewed because merger talks between the two leagues were on-going. As the pleadings themselves show, however, this proposed merger never took place. Therefore, even assuming that some evidence of a conspiracy to injure plaintiff could be gleaned from the holding of merger talks, a doubtful proposition at best, such evidence is certainly dissipated by the unsuccessful conclusion of those talks culminating in no merger.

In addition to the failure to allege with sufficient particularity the nature of the alleged conspiracy, there are several other technical deficiencies in plaintiff's antitrust claim. First, plaintiff fails to demonstrate the existence of a restraint of trade. Second, plaintiff does not allege that the purported conspiracy affects interstate commerce. Finally, plaintiff fails to state how the alleged conspiracy caused him damage. *See generally, Adams v. American Bar Association, supra* at 223. In short, I rule that plaintiff's antitrust claim is wholly frivolous, *Radovich v. National Football League*, 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). Since it fails to state a claim upon which relief can be granted, it should be dismissed. Even if the plaintiff could somehow overcome the deficiencies listed above, which seems unlikely, I seriously doubt whether as an employee he has standing to maintain an action under the antitrust laws.

■ Plaintiff's final claim is equally infirm if it is based instead on the civil rights laws. In effect, plaintiff is alleging that the NHL and WHA discriminated against him on the basis of his United States citizenship by hiring only Canadian referees. However, the only possible basis for such a claim, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, does not bar employment discrimination based on citizenship or alienage. *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 95, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973); *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 927 (9th Cir. 1975). Therefore, plaintiff has again failed to state a claim for which relief can be granted, and his civil rights claim is hereby dismissed.

On the basis of the foregoing, I rule that plaintiff's entire action should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Order accordingly.