804 F.2d 3
 CLARK & REID COMPANY, INC. and Household Goods Carriers'
Bureau, Inc., Petitioners,
v.
UNITED STATES of America and Interstate Commerce Commission,
Respondents.
National Small Shipments Traffic Conference, Inc. and Drug
and Toilet Preparation Traffic Conference, Inc.,
et al., Intervenors.
 No. 86-1062.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 3, 1986.
Decided Oct. 30, 1986.
 
 Thomas M. Auchincloss, Jr. with whom Leo C. Franey and Rea, Cross & Auchincloss, were on brief for petitioners.
 John P. Fonte for U.S. and Laurence H. Schecker for I.C.C. with whom Robert B. Nicholson, Dept. of Justice, Douglas H. Ginsburg, Asst. Atty. Gen., Robert S. Burk, Gen. Counsel, and John J. McCarthy, Jr., Deputy Associate Gen. Counsel, were on joint brief for respondents.
 Elliott Bunce with whom John W. McFadden, Jr., Kevin Williams and Rice, Carpenter and Carraway were on brief for intervenors The Eastern Cent. Motor Carriers Ass'n, Inc., Middle Atlantic Conference, and Regular Common Carrier Conference.
 Daniel J. Sweeney and McCarthy, Sweeney & Harkaway, P.C. on brief for intervenors National Small Shipments Traffic Conference, Inc. and Drug and Toilet Preparation Traffic Conference, Inc.
 Before BOWNES and TORRUELLA, Circuit Judges, and CARTER,* District Judge.
 BOWNES, Circuit Judge.
 
 
 1
 The Household Goods Carriers' Bureau (HGCB), and the Clark & Reid Company, Inc. (Clark & Reid), a member of HGCB, petition for review of an Interstate Commerce Commission (ICC) decision ordering the cancellation of tariff schedules proposed by HGCB. The ICC determined that the proposed rate changes violated statutory prohibitions on collective rate making. Because we conclude that Clark & Reid does not have standing to appeal the ICC's decision, and that HGCB does not have venue in this circuit, we do not consider the merits of the ICC's decision. Instead, we transfer the proceeding to the United States Court of Appeals for the District of Columbia Circuit, where HGCB has venue.
 
 I. BACKGROUND
 
 2
 On March 1, 1985, HGCB filed a tariff supplement proposing changes in the rates and charges for accessorial services[1] performed by its membership of household goods motor carriers. On April 3, 1985, the Department of Justice filed a petition opposing HGCB's proposal. Although common carriers are granted a special exemption from the antitrust laws for collective rate making, see 49 U.S.C. Sec. 10706 (1982), the exemption does not apply to a "single-line rate" unless certain very limited exceptions apply. 49 U.S.C. Sec. 10706(b)(3). A single-line rate is defined in the statute as "a rate, charge, or allowance proposed by a single motor common carrier that is applicable only over its line and for which the transportation can be provided by that carrier." 49 U.S.C. Sec. 10706(b)(1). The Department of Justice objected to HGCB's proposal on the ground that it was for single-line rates not within any exceptions to the antitrust laws. HGCB argues that accessorial rates and charges are not single-line, and even if they were, they would fall under two of the exceptions to the single-line rate prohibitions.
 
 
 3
 On April 23, 1985, the ICC suspended the proposed tariff supplement and ordered an investigation into its lawfulness. The ICC conducted the proceedings under a modified procedure, which dispensed with oral testimony. See 49 C.F.R. 1112.1 (1985). Respondents were required to file opening statements of facts and arguments by June 10. In its order, the ICC said that "[c]arriers parties to Household Goods Carriers' Bureau, Agent, tariff ICC HGB 400-C [the proposal] are made respondent to this proceeding." Two opening statements were filed in support of the proposal. The Eastern Central Motor Carriers Association, Inc., Middle Atlantic Conference, National Motor Freight Traffic Association, Inc., and the Regular Common Carrier Conference, Inc., filed one as intervenors. Counsel to HGCB submitted the other opening statement in support of the proposal on behalf of "Respondents." Although the "Respondents' " opening statement requested relief for "HGCB and its member carriers," it did not contain any mention of particular HGCB members responding in the proceeding. Verified statements by six member carriers were attached, but petitioner Clark & Reid was not included in this group. Statements in opposition to the proposal were filed by the National Small Shipments Traffic Conference, Inc., and the Drug and Toilet Preparation Traffic Conference, Inc., jointly, and the Department of Justice. The same two parties that submitted opening statements in support of the proposal filed replies.
 
 
 4
 On November 22, 1985, the ICC decided that the proposed changes in accessorial rates and charges were for single-line rates not within the statutory exceptions. The proposed tariff supplement was ordered cancelled. HGCB and Clark & Reid petition this court for a review of the ICC's decision. The substantive issue on which they seek review is the applicability of the single-line rate definition and statutory antitrust exceptions to HGCB's proposed tariff supplement.
 
 II. STANDING TO APPEAL
 
 5
 Appellate review of ICC orders is governed by the Hobbs Act. 28 U.S.C. Secs. 2341-2351 (1982). Section 2344 of the Hobbs Act provides that "[a]ny party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. Sec. 2344. Venue lies "in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit." Id. Sec. 2343. The residence of a corporate plaintiff is in its place of incorporation. American Civil Liberties Union v. FCC, 774 F.2d 24, 26 (1st Cir.1985). Petitioner Clark & Reid's residence is in this circuit; it has venue here and in the District of Columbia Circuit. Venue for an association is "determined by looking to the residence of the association itself rather than that of its individual members." Denver & Rio Grande W. R.R. Co. v. Brotherhood of R.R. Trainmen, 387 U.S. 556, 559-60, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967); American Civil Liberties Union v. FCC, 774 F.2d at 26. Petitioner HGCB's residence is in the Fourth Circuit; it has venue there and in the District of Columbia Circuit. Therefore, for this matter to be reviewable here, Clark & Reid must have standing to appeal.
 
 
 6
 Clark & Reid must be a "party aggrieved by the final order" to have standing to appeal under the Hobbs Act. 28 U.S.C. Sec. 2344. We have held that this language means that a petitioner must have been a party to the agency proceedings. American Civil Liberties Union v. FCC, 774 F.2d at 26. Other courts of appeals have interpreted the statute similarly. See Simmons v. ICC, 716 F.2d 40, 42 (D.C.Cir.1983); American Trucking Ass'ns v. ICC, 673 F.2d 82, 84 (5th Cir.1982), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983); see also Blackstone Valley Nat'l Bank v. Board of Governors, 537 F.2d 1146, 1147-48 (1st Cir.1976) (interpreting identical language in the statute governing appeals of Federal Reserve Board decisions, 12 U.S.C. Sec. 1848 (1982)); First Nat'l Bank of St. Charles v. Board of Governors, 509 F.2d 1004, 1006-08 (8th Cir.1975) (same). The word "party" has been defined narrowly for the purposes of the statute; it applies only to those who directly and actually participated in the administrative proceedings. American Civil Liberties Union v. FCC, 774 F.2d at 26; see also American Trucking Ass'ns v. ICC, 673 F.2d at 84. Clark & Reid did not directly and actually participate in the ICC proceedings.
 
 
 7
 Clark & Reid's claim to party status is based on the statement in the ICC's order initiating an investigation that "[c]arriers parties to Household Goods Carriers' Bureau, Agent, tariff ICC HGB 400-C are made respondent to this proceeding." Clark & Reid interprets this language as making all HGB carriers respondents, and claims to have attained party status because the applicable regulations define a "party" as, among other things, a "respondent." See 49 C.F.R. 1101.2(d) (1985).
 
 
 8
 The import of the ICC order, however, is not so clear. The order could be read as naming only HGCB as respondent; it does not say that all member carriers are made respondents, but rather that "[c]arriers parties to ... tariff ICC HGB 400-C are made respondent to this proceeding." (Emphasis added.) The use of the singular suggests that only one party--HGCB, as the agent for its members--was being identified as a respondent.
 
 
 9
 Even if we agreed with Clark & Reid's interpretation of the effect of the ICC's order, we do not equate the regulatory definition of a "party" in an ICC proceeding with the participatory party status required for judicial review under the Hobbs Act. In an ICC proceeding, a "respondent" is a procedural term used to designate a person or entity as eligible to participate in an investigation. See 49 C.F.R. 1100.5(c) (1981). By naming all of HGCB's members as respondents, the ICC would be inviting individual carriers to submit their views on the proposal's lawfulness. But the only statements claimed to have been submitted by Clark & Reid were submitted by counsel to HGCB requesting relief for "HGCB and its member carriers." This does not constitute an election by all 1,700 HGCB members to become active participants. HGCB continued to be the only voice of its membership in the proceedings.
 
 
 10
 There is no doubt that an organization can have standing to represent its members in a proceeding for judicial review. See Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972); National Motor Freight Traffic Ass'n v. United States, 372 U.S. 246, 247, 83 S.Ct. 688, 689, 9 L.Ed.2d 709 (1963). HGCB, a forum organization by which 1,700 motor carriers arrive at rate agreements, was Clark & Reid's designated representative in the agency proceedings. Clark & Reid offered no differing or dissenting views on the proposal to the ICC; it does not suggest that its interests will not continue to be represented adequately by HGCB. Cf. American Civil Liberties Union v. FCC, 774 F.2d at 26 (dismissing members from appeal in part because they were adequately represented by their organization). The actual proponent and advocate of the tariff supplement throughout the administrative process should continue the representation of its members in seeking judicial review.
 
 
 11
 Furthermore, granting Clark & Reid standing to appeal in this case would not be in the interest of sound judicial administration. Congress' use of "party" aggrieved, as opposed to the term "person" aggrieved in the general judicial review provision of the Administrative Procedure Act, 5 U.S.C. Sec. 702 (1982), "demonstrates an intent to limit the number of persons entitled to petition for review." American Civil Liberties Union v. FCC, 774 F.2d at 25-26, (citing Simmons v. ICC, 716 F.2d at 42-43). Allowing an appeal to be brought by an organization's member that did not participate actively in the agency proceedings would allow a membership organization to search for and select a forum in which it is most likely to obtain a favorable result. It need only select as petitioner a member who has venue in the desired circuit. Congress could not have intended to give disappointed participants in the administrative process such a wide selection of forums for judicial review. As we said when we interpreted the Hobbs Act before, "there is simply no basis to conclude that Congress intended to endow membership corporations with a choice of venue unavailable to other petitioners. To so hold would, moreover, sanction unlimited forum-shopping by membership corporations, a practice we are loathe to encourage." American Civil Liberties Union v. FCC, 774 F.2d at 26. We, therefore, hold that Clark & Reid lacks standing to prosecute this appeal.
 
 
 12
 As a court of appeals, we have "an inherent discretionary power to transfer the proceeding to another circuit in the interest of justice and sound judicial administration." Eastern Air Lines, Inc. v. CAB, 354 F.2d 507, 510 (D.C.Cir.1965); see also Natural Resources Defense Council, Inc. v. EPA, 465 F.2d 492, 495-96 (1st Cir.1972) (courts of appeals may transfer petitions for review of agency decisions); Pearce v. Director, Office of Workers' Compensation Programs, 603 F.2d 763, 771 n. 3 (9th Cir.1979) (listing cases in eight circuits holding that courts of appeals have inherent power to transfer cases); cf. Dantes v. Western Found. Corp., 614 F.2d 299, 301, 301 n. 1 (1st Cir.1980) (court does not have power to transfer if it does not have subject matter jurisdiction). Dismissal of the petition would foreclose review of the ICC's decision; the sixty-day time limitation for filing for review has long since passed. The substantive issues raised by the petitioners are sufficiently important to warrant a transfer to a circuit with venue.
 
 
 13
 Although HGCB has venue in the Fourth Circuit and in the District of Columbia Circuit, the District of Columbia Circuit is the more appropriate forum. It recently has interpreted the statute in issue, see Niagara Frontier Tariff Bureau, Inc. v. United States, 780 F.2d 109 (D.C.Cir.1986), and has great familiarity with regulatory law.
 
 
 14
 It is ordered that this case be transferred to the United States Court of Appeals for the District of Columbia Circuit.
 
 
 
 *
 Of the District of Maine, sitting by designation
 
 
 [1]
 Accessorial services include packing and unpacking, extra and storage-in-transit pickup and delivery, regular and overtime labor, overtime and light and bulky loading and unloading, storage-in-transit and warehousing, appliance servicing, and elevator, stairs, and excessive distance carries