**John Clark DONATELLI**

v.

**NATIONAL HOCKEY LEAGUE, and Pocklington Amalgamated Sports Corp. d/b/a Edmonton Oilers.**

Civ. A. No. 88–0594 L.

United States District Court, D. Rhode Island.

March 13, 1989.

John B. Harwood, McKinnon & Harwood, Pawtucket, R.I., Martin W. Aisenberg, Providence, R.I., for plaintiff.

Christopher Little and John Voorhees, Tillinghast Collins & Graham, Providence, R.I., Herbert Dym, Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The present dispute arose out of contract negotiations between a Rhode Island hockey player, John Clark Donatelli, ("Donatelli"), and a Canadian professional hockey team, the Edmonton Oilers Hockey Corp. ("Edmonton"). After initial, unsatisfactory negotiation attempts with Edmonton, Donatelli sought to be declared a free agent by the National Hockey League ("NHL"). The NHL ruled that Donatelli was still the property of Edmonton and was not free to negotiate with any other NHL teams. Subsequently, an arbitrator reached the same conclusion and Donatelli filed the instant suit against Edmonton and the NHL.

This matter is presently before the Court on defendants' motion to dismiss for lack of in personam jurisdiction over the NHL and Edmonton. Fed.R.Civ.P. 12(b)(2). Opposing the motion, Donatelli contends that

both the NHL and Edmonton have the necessary minimum contacts with Rhode Island to subject them to this forum's jurisdiction. Further, Donatelli argues that the NHL, as an unincorporated association, is subject to the general jurisdiction of every court having general in personam jurisdiction over a member of the league. Donatelli maintains that this Court has jurisdiction over several NHL teams and, through them, over the NHL itself.

The issues thus presented for resolution in this opinion are: (1) has Edmonton established the necessary contacts with Rhode Island to subject it to this Court's general in personam jurisdiction; (2) has the NHL, viewed as an entity, established the necessary contacts with Rhode Island to subject it to this Court's general in personam jurisdiction; and (3) is an unincorporated association subject to the general in personam jurisdiction of every court having general in personam jurisdiction over one of its members.

## BACKGROUND

The background facts in this dispute, as described in Donatelli's complaint, are as follows. John Clark Donatelli is an ice hockey player. In 1984 the New York Rangers ("Rangers") chose Donatelli in the annual NHL player draft. At that time, Donatelli chose to remain at Boston University where he played collegiate hockey during the 1984–85, 1985–86, and 1987–88 seasons. Then Donatelli opted to forego his senior year of college hockey to play on the 1988 United States Olympic Hockey Team.

Pursuant to NHL rules, the Rangers organization carried Donatelli on its reserve list as an unsigned draft choice. On or about October 24, 1986, the Rangers organization traded its rights in Donatelli to Edmonton which also carried him as an unsigned draft choice.

On or about July 15, 1987, Donatelli, through counsel, sent a letter to Edmonton advising that he was "interested in playing professional hockey once the 1988 Olympic hockey schedule [was] finished." Section 16B.5(b) of the NHL by-laws apparently provides that an unsigned draft choice "may at any time by notice in writing delivered to the claiming club, with copy to the [NHL] Central Registry, declare his desire to be tendered a standard Player's Contract with that club." Donatelli's counsel neglected to send a copy of his letter to the Central Registry.

On or about August 3, 1987, Donatelli sent a contract proposal to Edmonton. However, Donatelli's counsel again neglected to send a copy of his missive to the Central Registry. Finally, in early October of 1987, Edmonton sent Donatelli a letter acknowledging the July 15 communication and requesting a contract proposal. In response, on or about November 9, 1987, Donatelli sent Edmonton a copy of his August 3 proposal, but again did not send a copy to the Central Registry. Edmonton failed to respond.

On or about January 11, 1988, Donatelli's counsel sent a letter to the NHL Central Registry, enclosing copies of his correspondence with Edmonton, in which he asserted that Donatelli was a free agent. Donatelli's counsel relied on section 16B.5(b) of the NHL by-laws which (it is alleged) provides that if "the claiming club fails to tender to the claimed player a contract within thirty days of filing of the notice by the claimed player in the Central Registry," then the claimed player becomes a free agent if he is over twenty years old. Donatelli relied on a similar case involving another hockey player-turned free agent, who also failed to satisfy the notification requirements of the by-laws, to excuse his failure to deliver copies of his contract solicitations to the Central Registry.

The NHL and Edmonton failed to declare Donatelli a free agent. Instead, on or about January 20, 1988, Edmonton sent Donatelli a contract proposal. Pursuant to the collective bargaining agreement between the NHL and the NHL Players' Association, Donatelli sought arbitration of his dispute before the league's president. The president, in a decision issued September 15, 1988, denied Donatelli's bid to be released from Edmonton's reserve list. The president ruled that Donatelli's counsel's failure to transmit copies of his 1987

letters to the Central Registry meant that the 30 day response period did not begin to run until counsel's first notification of the Central Registry in January of 1988. Since Edmonton responded within thirty days of that notification, Donatelli was still their property.

In response, Donatelli filed a five-count complaint in Rhode Island Superior Court on October 5, 1988 against the NHL and Edmonton's predecessor corporation, Pocklington Amalgamated Sports Corp. Counts I and II are contract claims alleging bad faith contractual breaches by the NHL. Count III is a tort claim against the NHL and Edmonton alleging tortious interference with prospective business relations. Count IV is a state antitrust claim against the NHL and Edmonton alleging that they, in combination with each other and other NHL clubs, have engaged in an illegal group boycott or concerted refusal to deal in violation of Rhode Island General Laws § 6–36–4. Finally, Count V is a motion to vacate the arbitration award. Donatelli seeks injunctive relief and money damages, including treble damages and attorney fees, in his complaint.

On October 12, 1988, defendants filed a petition for removal to federal court. Then, on October 18, 1988, defendants filed the instant Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Donatelli filed an opposition to this motion. Thereafter, the parties engaged in limited, jurisdictional discovery concerning the contacts that Edmonton and the NHL have with Rhode Island.

On December 1, 1988, the parties engaged in oral argument before this Court. During that argument, the Court raised the possibility that the NHL, as an unincorporated association, might be subject to this forum's general in personam jurisdiction if one or more of its members were subject to general in personam jurisdiction here. Both parties agreed that little authority exists on this point; however, the NHL claimed that the answer is "no". To the contrary, Donatelli alleged that NHL member teams, the Boston Bruins ("Bruins") and perhaps the Hartford Whalers ("Whal-ers"), are subject to this forum's general in personam jurisdiction, and that, therefore, this Court automatically has general personal jurisdiction over the NHL.

The Court took this matter under advisement and invited the parties to submit additional memoranda on the issue of personal jurisdiction over an unincorporated association. In their supplemental memorandum, defendants did not challenge the claim that the Bruins and Whalers are subject to this Court's general personal jurisdiction, but instead treated the issue as irrelevant. They claim that jurisdiction over members of an unincorporated association does not create jurisdiction over the association itself. Instead, defendants contend that only the contacts of the NHL itself, as distinct from those of its member clubs, should be considered in jurisdictional determinations.

The matter is now in order for decision.

## DISCUSSION

The burden of proving in personam jurisdiction rests with the plaintiff. Since this suit does not arise out of defendants' contacts with Rhode Island, personal jurisdiction, if it exists at all, must be general rather than specific. Though allowed to conduct jurisdictional discovery, Donatelli has failed to show that Edmonton has the necessary level of minimum contacts with this forum to subject it to this Court's jurisdiction. In fact, Donatelli has not demonstrated that Edmonton has any Rhode Island contacts. Moreover, the contacts of the NHL itself, in contradistinction to those of its member teams, are not sufficient to give this Court general personal jurisdiction over it. However, this Court holds that an unincorporated association is subject to the personal jurisdiction of every forum having general in personam jurisdiction over one or more of its members. Since Donatelli has alleged and the NHL has not contested the proposition that the Bruins corporation has established the necessary minimum level of contacts with Rhode Island to subject it to this Court's general in personam jurisdiction, and therefore the allegation must be accepted as

true for purposes of this motion, this Court has general personal jurisdiction over the NHL through the Bruins. Therefore, the motion to dismiss must be granted as to Edmonton, but denied as to the NHL.

In the past, this Court has frequently addressed the issue of when it has personal jurisdiction over a non-resident defendant. *Wood v. Angel,* 707 F.Supp. 81 (D.R.I. 1989); *American Sail Training Ass'n v. Litchfield,* 705 F.Supp. 75 (D.R.I.1989); *Thompson Trading LTD. v. Allied Lyons PLC,* 123 F.R.D. 417 (D.R.I.1989); *Levinger v. Matthew Stuart & Co., Inc.,* 676 F.Supp. 437 (D.R.I.1988); *Petroleum Serv. Holdings, Inc. v. Mobil Exploration & Producing Services, Inc.,* 680 F.Supp. 492 (D.R.I.1988); *Dupont Tire Serv. v. N. Stonington Auto–Truck Pl.,* 659 F.Supp. 861 (D.R.I.1987).

As this Court recently noted in *Levinger:*

> Whether a federal court has personal jurisdiction over a defendant depends upon two criteria: (1) whether the mandates of the forum state's long-arm statute have been satisfied, and (2) whether the defendant has been hailed into the particular court in accordance with the due process clause of the Fourteenth Amendment to the United States Constitution. Since the Supreme Court of Rhode Island has held that Rhode Island's long-arm statute reaches to the full breadth of the Fourteenth Amendment, *Conn. v. ITT Aetna Finance Co.,* 105 R.I. 397, 402, 252 A.2d 184, 186 (1969), one need only examine the foundation for the second criterion listed above.

676 F.Supp. at 439; *see also Thompson Trading,* 123 F.R.D. at 426. Rhode Island's expansive long-arm statute is codified as R.I. Gen. Laws § 9–5–33.

In a long line of cases, the United States Supreme Court has sought to define the Fourteenth Amendment boundaries of in personam jurisdiction. The basic standard announced by the Supreme Court in 1945 is as follows:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Company v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

### I. *Minimum Contacts*

Donatelli's asserted causes of action are all unrelated to defendants' contacts with Rhode Island. Therefore this Court's specific in personam jurisdiction is not applicable, and defendants can only be subject to personal jurisdiction in this forum under a theory of general in personam jurisdiction. *See generally Thompson Trading,* 123 F.R.D. at 425 (discussing the distinction between general and specific jurisdiction).

To be subject to a court's general personal jurisdiction a defendant must establish "continuous and systematic" contacts with the forum achieving a sufficient level to meet the *International Shoe* due process standard. *International Shoe,* 326 U.S. 317–18, 66 S.Ct. at 158–59; *Wood v. Angel,* 707 F.Supp. at 83; *Thompson Trading,* 123 F.R.D. at 426–27; *see also Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984) (Since claims against defendant did not "arise out of" defendant's activities within Texas, the Court "must explore the nature of [defendant's] contacts with ... Texas to determine whether they constitute the kind of continuous and systematic general business contacts" required for jurisdiction.).

*Helicopteros* is presently the leading Supreme Court case discussing minimum contacts for general personal jurisdiction purposes. In *Helicopteros* the plaintiff filed a wrongful death action in Texas against a Columbian corporation and others. The action stemmed from a helicopter crash that occurred in Peru. This court summarized the pertinent facts of that case in *Petroleum Services Holdings, Inc.,* 680 F.Supp. at 495–96.

[T]he chief executive of a Columbian corporation (Helicol) flew to Texas to discuss the sale of helicopters to a joint-venture (Consortio) with its headquarters in Houston, Texas. *Id.* [466 U.S.] at 410, 104 S.Ct. at 1870. Prior to the consumation of this agreement, Helicol had other contacts with the State of Texas. Helicol purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4,000,000 from Bell Helicopter Company in Fort Worth, Texas. Moreover, Helicol sent prospective pilots, management and maintenance personnel to Fort Worth for training and "plant familiarization." Finally, Helicol received over $5,000,000 in payments from Consorcio drawn upon First City National Bank of Houston. *Id.* at 410–411, 104 S.Ct. at 1870–71. Despite the apparent substantial nature of these contacts with the State of Texas, the *Helicopteros* court held "Helicols' contacts with the State of Texas were insufficient to satisfy the requirements of the Due Process Clause." *Id.* at 418–19, 104 S.Ct. at 1874.

Having given some substantive meaning to the term "continuous and systematic" minimum contacts, the Court now turns to analyzing defendants' contacts with Rhode Island in light of the general in personam jurisdiction standard.

## A. The NHL

■ The NHL, as an entity distinct from its members, lacks the necessary minimum contacts with Rhode Island to subject it to this Court's general personal jurisdiction. As an initial caveat, the Court notes that it is arguable whether the NHL, as an unincorporated association, can be divorced from its members and treated as a separate, independent, quasi-legal entity for jurisdictional purposes. The connection between an unincorporated association and its members as it relates to in personam jurisdiction is discussed hereinafter in Section II.

The NHL is an unincorporated association composed of twenty-one professional ice hockey teams located in the United States and Canada. It maintains offices in Montreal, Toronto and New York City, and has the following contacts with Rhode Island. First, during each of the past ten years, the NHL has provided officials for one or two exhibition hockey games played by the Bruins in Providence. The Bruins corporation reimburses the league for these officials. Second, the NHL sends scouts into Rhode Island to make and file reports with the league on various amateur hockey players. These scouts are not permitted to recruit or talk to players. Finally, NHL games are televised in Rhode Island and goods bearing the NHL logo are sold here. The NHL contends such activities are not NHL contacts since they are pursued by third party licensees and any profits go to the member teams and not the league.

In any case, these NHL activities are not sufficient to qualify as "continuous and systematic" conduct justifying the exercise of general in personam jurisdiction under the *International Shoe* and *Helicopteros* standard. Any one factor from the above-outlined category of contacts is insufficient, standing alone, to subject the NHL to this forum's general jurisdiction. First, providing league officials once or twice a year is de minimus for personal jurisdiction purposes. Second, limited scouting activity is insufficient to create personal jurisdiction over a sporting league. *Munchak Corp. v. Riko Enterprises, Inc.,* 368 F.Supp. 1366, 1374 (M.D.N.C.1973); *Cf. Glater v. Eli Lilly & Co.,* 744 F.2d 213, 217 (1st Cir.1984) (The activity of salesmen soliciting orders in the forum was not enough contact to subject defendant to general personal jurisdiction.). Third, where the cause of action does not arise from television broadcasts into a state, the broadcasts are not sufficient contacts to subject the defendant to the forum's jurisdiction. *Zimmerman v. United States Football League,* 637 F.Supp. 46, 48 (D.Minn.1986); *see also Glater v. Eli Lilly & Co.,* 744 F.2d at 216 (citing *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Fourth, even if third party licensees sold a small amount of goods bearing the NHL logo from which the league itself

derived a profit, such contact is insufficient for general personal jurisdiction purposes. *Glater v. Eli Lilly & Co.*, 744 F.2d at 217. Finally, even when taken together, the NHL's contacts do not subject it to this forum's general in personam jurisdiction.

### B. Edmonton

■ Donatelli has failed to establish that Edmonton has any contacts, let alone the requisite level of minimum contacts, with Rhode Island. It is undisputed that Edmonton has never played a game in Rhode Island. Edmonton has no agent in Rhode Island, is not registered to do business, does not have an interest in real property, nor has it engaged in advertising or promotional activities in this state.

The only Edmonton connection with Rhode Island that Donatelli alleges is that: (1) Edmonton plays the Bruins in Boston; (2) since the Bruins corporation sells home game tickets in Rhode Island, Edmonton must profit one way or another from these sales; and (3) the same can be said regarding profits derived from the televising of these games into Rhode Island. To the contrary, through affidavit, the NHL and Edmonton have shown that Edmonton derives no revenue from these Rhode Island-related, Bruins activities. Moreover, even if Edmonton did indirectly derive some income from Rhode Island, such contacts would not be so continuous and systematic so as to subject Edmonton to this Court's general personal jurisdiction. Therefore, Edmonton's motion to dismiss must be granted.

### II. *Unincorporated Associations*

■ The NHL is an unincorporated association. Therefore, it is subject to the general personal jurisdiction of every court having general personal jurisdiction over one of its member clubs. Since it is presently uncontested that the Bruins corporation is subject to this forum's general in personam jurisdiction, the NHL is also subject to this Court's general in personam jurisdiction.

The NHL argues that it, like a corporation, should only be subject to general personal jurisdiction in those states where it has its principal place of business or has itself established sufficient minimum contacts. However, the NHL is not a corporation. One of the benefits of incorporating an association is that such a metamorphosis may limit the number of forums in which the entity may be sued. Yet this the NHL has failed to do, and it may not now cloak itself in the mantle of a corporation in order to escape this Court's jurisdiction.

The Court wishes to stress that jurisdiction over an unincorporated association through one of its members is not an agency issue. The Court is not ruling that the member, here the Bruins corporation, is an agent of the association, here the NHL. Rather, the Court holds that the member is actually part of the NHL. Therefore, the actions of the Bruins corporation are, in effect, the actions of the NHL for jurisdictional purposes.

Several United States district courts, including one in this circuit, have implicitly ruled that an unincorporated athletic association may be subject to a forum's in personam jurisdiction through one of its member clubs. *Zimmerman v. United States Football League*, 637 F.Supp. at 47; *Dowling v. United States*, 476 F.Supp. 1018, 1019 (D.Mass.1979). In the *Dowling* opinion, though the action was dismissed for failure to state a claim upon which relief can be granted, the Court treated the NHL and another association as being subject to its personal jurisdiction through their member clubs. The Court wrote as follows:

> Defendant NHL is an entity composed of member clubs, one of which, the Boston Professional Hockey Association, Inc. (Bruins), is located and does business in this District. Defendant WHA is also composed of member clubs, one of which, the New England Whalers is located in and does business in this District.

476 F.Supp. at 1019.

Similarly in *Zimmerman*, the U.S. District Court for Minnesota held that it lacked jurisdiction over an unincorporated association, in part, because it lacked jurisdiction over any of its members. The Court wrote:

The USFL, also a defendant in this action, is an unincorporated association currently comprised of eight active football franchises. None of the USFL franchises have their principal place of business in Minnesota. The only contact any defendants have with Minnesota is that Minnesota television stations carry broadcasts of USFL football games.

637 F.Supp. at 47. Therefore, the Court dismissed the action for lack of personal jurisdiction.

This Court is unaware of any federal court opinion directly addressing the issue of whether personal jurisdiction over an unincorporated association may be obtained through its members. There are several jurisdictional cases in which the ruling court looked only to the contacts of the association and not to those of its members. *Nehemiah v. Athletics Congress of U.S.A.*, 765 F.2d 42 (3rd Cir.1985); *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731 (10th Cir.1984), *cert. denied Federation Internationale de Basketball Amateur v. Behagen*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *Parish v. National Collegiate Athletic Assn.*, 361 F.Supp. 1214 (W.D.La.1973). However, none of these decisions considered whether a court having jurisdiction over a member of an association thereby has jurisdiction over the unincorporated association itself.

Over the years, the judiciary has developed a substantial body of authority that states that for federal diversity jurisdiction purposes, an unincorporated association is a citizen of every state in which one of its members is a citizen. For example, in *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), the United States Supreme Court followed "the generally prevailing principle that an unincorporated association's citizenship is that of each of its members." *Id.* 382 U.S. at 146, 86 S.Ct. at 272. *See also Navarro Savings Assn. v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980) ("When the 'persons composing [an unincorporated] association' sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court."); *Tuck v. United*

*Services Automobile Ass'n*, 859 F.2d 842, 844–45 (10th Cir.1988); *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir.1987); *Xaros v. U.S. Fidelity and Guaranty Co.*, 820 F.2d 1176, 1181 (11th Cir.1987); *Trombino v. Transit Cas. Co.*, 110 F.R.D. 139, 144 (D.R.I.1986).

Since the "citizenship" of an unincorporated association is that of each of its members for federal diversity jurisdiction purposes, it follows by analogy that the "citizenship" of an unincorporated association for in personam jurisdiction purposes should also be that of its members. Moreover, the amenability to general personal jurisdiction of the members should also be visited upon the unincorporated association itself. While the Court is aware that this ruling intellectually jumps the gap between "citizenship" for diversity purposes and personal jurisdiction, it is unaware of any reason to distinguish between the two concepts in the instant situation involving an unincorporated association and its members. It seems illogical to hold that an unincorporated association is a "citizen" of a forum, but not subject to that forum's jurisdiction.

While venue for an unincorporated association is determined without considering the residences of its members, *Denver & Rio Grande W.R.R. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 559–60, 87 S.Ct. 1746, 1748–49, 18 L.Ed.2d 954 (1967), this is not controlling in the area of personal jurisdiction. *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947 (1st Cir.1984). In *Clark & Reid Co., Inc. v. United States*, 804 F.2d 3 (1st Cir.1986), the Court of Appeals found that "[v]enue for an association is 'determined by looking to the residence of the association itself rather than that of its individual members.'" *Id.* at 5 (quoting *Denver & Rio Grande W.R.R.*, 387 U.S. at 559–60, 87 S.Ct. at 1748–49). Yet, the First Circuit Court of Appeals has also stressed the important distinction between venue and in personam jurisdiction. In *Wool Masters* the Court held:

[T]he considerations underlying personal jurisdiction are not the same as those

underlying venue. The minimum contacts test for personal jurisdiction is based on the *minimum* amount of "fairness" required in order to comport with due process. Venue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation. *Wool Masters,* 743 F.2d at 949. The Court went on to rule:

> Longarm statutes, and extraterritorial service through the concept of minimum contacts, on the other hand, allow a defendant to be haled into a distant court to allow a state to protect *its* interests, and the interests of *plaintiffs* to the extent that doing so is not so unfair as to deny a defendant due process of law.

*Id.* at 951 (citations omitted); *see also Denver & Rio Grande W.R.R.,* 387 U.S. at 559–60, 87 S.Ct. at 1748–49.

In sum, the Court is faced with two alternatives in deciding whether or not an unincorporated association is subject to general personal jurisdiction in every forum having personal jurisdiction over one of its members. On the one hand, the Court could treat the personal jurisdiction issue in the same manner that venue is resolved. On the other hand, the Court could treat the personal jurisdiction issue in the same way as citizenship for federal diversity is determined. In light of the fundamental difference between personal venue and personal jurisdiction, as explained in *Wool Masters,* this Court finds that the latter approach is the more sound. Therefore, this Court holds that an unincorporated association is subject to personal jurisdiction through its constituent members.

## CONCLUSION

Donatelli has failed to demonstrate that Edmonton has the necessary minimum contacts with Rhode Island to subject it to this Court's general personal jurisdiction. On the other hand, while Donatelli has not shown that the NHL, as a separate entity, has the necessary minimum contacts with this forum, the league appears on the facts known now to be subject to this Court's

general in personam jurisdiction through the contacts of the Bruins. This Court holds that an unincorporated association is subject to the general personal jurisdiction of every court having jurisdiction over one of its members. Therefore, defendants' motion to dismiss is granted as to Edmonton and denied as to the NHL.

*It is so Ordered.*