**Thomas A. WOOD, individually and on Behalf of Luz Elena Wood**

v.

**Leticia ANGEL, a.k.a. Leticia Wood; L. David Neely; Luz Elena Neely; and Monika Angel.**

**Civ. A. No. 88–0462 L.**

United States District Court, D. Rhode Island.

Feb. 15, 1989.

---

**82**

Nicholas L. Colangelo, Providence, R.I., for plaintiff.

L. David Neely, Thornwood, N.Y., and Susan Huntley (local counsel) of Licht & Semonoff, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This action is brought by an exclusive custodial parent against his former wife for money damages and injunctive relief arising out of her abductions of their minor daughter. Also named as defendants are the ex-wife's stepfather, mother, and sister.

Plaintiff, Thomas Wood, relies in his amended complaint on the following theories of recovery: wrongful concealment of a minor; unlawful abduction; false imprisonment; custodial interference; intentional and negligent infliction of emotional distress; and civil conspiracy. He seeks compensatory and punitive damages for past wrongs as well as a permanent injunction against defendants to prohibit further custodial interference.

Defendant, Leticia Wood, hereinafter referred to by her maiden name, Leticia Angel, joins defendants L. David Neely, Luz Elena Neely, and Monika Angel in motions to dismiss based on Fed.R.Civ.P. 12(b)(1), (2), (3) and (6). For purposes of this ruling, the Court need only address the personal jurisdiction issue raised by defendants. Determination of this threshold matter requires analysis of defendants' minimum contacts with Rhode Island based on the facts presented in plaintiff's complaint and supporting affidavits.

## BACKGROUND

Thomas Wood and Leticia Angel were married on October 28, 1982. Almost one year later, while the couple was residing in Hawaii, Leticia gave birth to a daughter. Ten months after the child's birth, Leticia threatened to leave Thomas and take their baby. On September 19, 1984, Thomas secured a mutual restraining order from the Family Court for the First Circuit of the State of Hawaii that prohibited either parent from removing the daughter from Hawaii. On September 21, 1984, Leticia Angel surreptitiously removed the child from that state.

Thomas initiated a search for his daughter by securing the services of attorneys and private investigators in Hawaii and in the State of New York where his in-laws reside. The private investigator in New York assisted him in locating the child at the home shared by Leticia's stepfather, mother, and sister in Thornwood, New York. Thomas contends that the members of his wife's family named as defendants in this case helped to plan and finance his daughter's removal from Hawaii in violation of his custodial rights and the Hawaii court's restraining order.

To regain custody of his child, Thomas first sought relief from the Hawaii Family Court. That Court granted him sole custody of his daughter, *pendente lite*, in an order dated January 29, 1985. Plaintiff then appeared in Family Court in New York to enforce the Hawaii custody order. Twelve days later the New York Family Court granted him a writ of *habeas corpus* for the return of his child and enforcement of the Hawaii ruling. Defendants, who were present at the New York Family Court proceedings, then relinquished control of the baby to Thomas who returned with her to Hawaii.

Leticia also returned to Hawaii where she and Thomas struck an agreement that allowed her to visit regularly with their infant child. This arrangement was short-lived. On August 4, 1985 Leticia again fled Hawaii with their daughter.

Thomas spent the next twelve months searching for his child. During that time

he secured from the Hawaii Family Court a divorce and exclusive permanent custody of his daughter. He also moved to Rhode Island, returning to Hawaii on one occasion to testify before a grand jury that subsequently indicted Leticia for first-degree custodial interference.

Thomas apprised law enforcement officials in other states about the indictment against Leticia. In response to this information, an Arizona police department reported a sighting of Leticia and the baby in that state. The Arizona authorities also informed Thomas that his wife and child had apparently fled to New York. This report led police officials in New York to the Neely home in Thornwood where Leticia was arrested and the baby was found. The child was then returned to her father.

Leticia was extradited to Hawaii where she pled guilty to the custodial interference charge, was released on bail, and allowed to return to New York. She was later granted limited supervised visitation rights by the Rhode Island Family Court. Since December of 1987 Leticia has made monthly, three-hour visits with her daughter at a facility in Providence operated by the Rhode Island Department for Children and Their Families (DCF). Her only other contacts with this jurisdiction are one personal appearance in Rhode Island Family Court to contest plaintiff's proposed modification of her visitation rights, a trip to Rhode Island to consult with a local attorney concerning these proceedings, a letter addressed to the Rhode Island Family Court, and a small number of appearances before that court made on her behalf by local counsel.

The contacts between the other defendants—T. David Neely, Luz Elena Neely, and Monika Angel—and the State of Rhode Island are similarly limited. Mr. Neely once transported Leticia to the offices of her Rhode Island attorney, and Mrs. Neely and Monika Angel have accompanied Leticia on some of her monthly visits to the DCF facility in Providence.

## DISCUSSION

This Court has repeatedly stated that its *in personam* jurisdiction over non-resident defendants can only be asserted when such defendants have established minimum contacts with this forum. *American Sail Training Assoc. v. Litchfield*, 705 F.Supp. 75 (D.R.I.1989); *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989); *Petroleum Services Holdings, Inc. v. Mobil Exploration and Producing Services, Inc.*, 680 F.Supp. 492, 494 (D.R.I. 1988); *Dupont Tire Service Center, Inc. v. North Stonington Auto–Truck Plaza, Inc.*, 659 F.Supp. 861, 862 (D.R.I.1987). Minimum contacts are the crux of constitutionally permitted personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The burden of demonstrating the sufficiency of this critical element of due process rests with the plaintiff. *Riverhouse Publishing Co. v. Porter*, 287 F.Supp. 1, 9 (D.R.I.1968).

Thomas Wood has failed to show that defendants' activities in Rhode Island satisfy the minimum contacts standard under either specific jurisdiction or general jurisdiction. The instant tort action is not a suit "arising out of or related to the defendants' contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed. 2d 404 (1984). The abductions were executed in Hawaii and the minor child was harbored in New York. Defendants did not enter Rhode Island until after the allegedly tortious acts were committed. Clearly, there is not a sufficient relationship among the defendants, the forum, and the litigation to assert specific jurisdiction in this case. *Rush v. Saychuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

Determination of whether this Court may exercise its general jurisdiction over any of these defendants is predicated upon the Supreme Court's requirement that contacts unrelated to a plaintiff's cause of action must be "continuous and systematic" with the forum state in order to comport with the due process clause. *Helicopteros* 466 U.S. at 415, 104 S.Ct. at 1872.

*Helicopteros*, for example, was a wrongful death action brought in Texas against a Columbian corporation and others for an

accident that occurred in Peru where one of the defendants' helicopters crashed. This Court summarized the pertinent facts of that case in *Petroleum Services Holdings, Inc.*, at 495–496.

[T]he chief executive of a Columbian corporation (Helicol) flew to Texas to discuss the sale of helicopters to a joint-venture (Consortio) with its headquarters in Houston, Texas. *Id.* [466 U.S.] at 410, 104 S.Ct. at 1870. Prior to the consumation of this agreement, Helicol had other contacts with the State of Texas. Helicol purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4,000,000 from Bell Helicopter Company in Fort Worth, Texas. Moreover, Helicol sent prospective pilots, management and maintenance personnel to Fort Worth for training and "plant familiarization." Finally, Helicol received over $5,000,000 in payments from Consorcio drawn upon First City National Bank of Houston. *Id.* at 410–411, 104 S.Ct. at 1870–71. Despite the apparent substantial nature of these contacts with the State of Texas, the Helicopteros court held "Helicols' contacts with the State of Texas were insufficient to satisfy the requirements of the Due Process Clause." *Id.* at 418–19, 104 S.Ct. at 1874.

The defendants' contacts here are certainly less significant than those discussed in *Helicopteros*. Isolated trips to Rhode Island to accompany a relative, or to consult an attorney, defend a suit, and visit one's child simply do not constitute "continuous and systematic" contacts with this forum.

For the foregoing reasons, defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction in this forum is granted.

IT IS SO ORDERED.