William SULLIVAN, Jr., Plaintiff,

v.

Paul TAGLIABUE, Pete Rozelle, the National Football League, the Atlanta Hawks, the Buffalo Bills, the Chicago Bears, the Cincinnati Bengals, the Cleveland Browns, the Dallas Cowboys, the Denver Broncos, the Detroit Lions, the Green Bay Packers, the Houston Oilers, the Indianapolis Colts, the Los Angeles Rams, the Minnesota Vikings, the New Orleans Saints, the New York Jets, the Phoenix Cardinals, the Pittsburgh Steelers, the San Diego Chargers, the Tampa Bay Buccaneers, the Washington Red Skins, and the Seattle Sea Hawks, Defendants.

Civ. A. No. 91–0259B.

United States District Court,
D. Rhode Island.

Feb. 28, 1992.

Joseph V. Cavanagh, Jr., Blish & Cavanagh, Providence, R.I., Law Offices of Joseph L. Alioto, Joseph L. Alioto, Angela Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiff.

Matthew F. Mederios, Flanders & Mederios Inc., Providence, R.I., John Vanderstar, Ethan M. Posner, Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

FRANCIS J. BOYLE, Chief Judge.

### I. FACTUAL BACKGROUND

Plaintiff William Sullivan, Jr., is the former owner of the New England Patriots (Patriots) football team. In 1987, Sullivan sought to sell a 49% interest in the Patriots to an investment banking company which was not then engaged in the operation or

management of professional football teams. Sullivan claims that the defendants, the National Football League (NFL); current NFL commissioner, Paul Tagliabue; former NFL commissioner, Pete Rozelle; and twenty-one of the twenty-eight NFL member clubs[1] prevented this sale by selectively enforcing an NFL rule which prohibits the sale, in whole or in part, of an interest in an NFL franchise to any company not engaged in the business of professional football. Sullivan further argues that from about December, 1986, to March, 1990, defendants Rozelle and Tagliabue permitted the owner of the San Francisco Forty–Niners to sell his majority ownership interest in that club to a company not engaged in the business of professional football. It is contended that Defendants Rozelle and Tagliabue allegedly concealed this sale from Sullivan. Sullivan argues that the defendants' actions violated the Sherman Antitrust Act.

Sullivan contends that this court has *in personam* jurisdiction over all defendants and that venue is proper in Rhode Island. Defendants argue that there is no basis upon which this court can establish personal jurisdiction over them.

## II. DISCUSSION

### A. *Personal Jurisdiction*

 In federal antitrust litigation involving corporate and non-corporate, non-resident defendants, as is the case here, there are two methods to establish jurisdiction over the parties. First, in the case of non-corporate entities, a federal court must look to the forum state's long arm statute in deciding whether it can properly assert jurisdiction over such defendants. *Delong Equipment Company v. Washington Mills Abrasive Co.,* 840 F.2d 843, 848 (11th Cir.1988). The Rhode Island long arm statute provides in pertinent part:

1. Defendant clubs are the entities that have NFL franchises in Atlanta, Buffalo, Chicago, Cincinnati, Cleveland, Dallas, Denver, Detroit, Green Bay, Houston, Indianapolis, Los Angeles (Rams), Minnesota, New Orleans, New York (Jets), Phoenix, Pittsburgh, San Diego, Tampa, Washington, and Seattle.

[E]very individual not a resident of this state ... that [has] the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such ... nonresident individuals ... amenable to suit in Rhode Island in every case not contrary to the provision of the constitution or laws of the United States.

R.I.Gen. Laws, section 9–5–33(a) (1985).

This statute has been interpreted as co-extensive with the due process clause of the fourteenth amendment. *O'Neil v. Picillo,* 682 F.Supp. 706, 710–12 n. 1 (D.R.I. 1988), *aff'd,* 883 F.2d 176 (1st Cir.1989) (citing *Roger Williams General Hospital v. Fall River Trust Co.,* 423 A.2d 1384 (R.I.1981)). The inquiry is whether each of the defendants have established minimum contacts with this forum as defined in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See O'Neil,* 682 F.Supp. at 710–12 n. 1. Under the *International Shoe* test, a court must (1) look at the quality and nature of the defendant's contacts with the state and (2) examine the reasonableness and fairness of asserting personal jurisdiction over that defendant. *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158.

 Second, jurisdiction over a corporate defendant is governed by both the state long-arm statute and section 12 of the Clayton Act, 15 U.S.C. § 22. *See Aro Mfg. Co. v. Automobile Body Research,* 352 F.2d 400, 402–03 (1st Cir.1965). The Clayton Act provides that

[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district where it may be found or transacts business; and all process in such cases may be served in

For those who might be interested, the clubs not named in the suit as defendants are the Kansas City Chiefs, Los Angeles Raiders, Miami Dolphins, New York Giants, New England Patriots, Philadelphia Eagles, and San Francisco Forty–Niners.

the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C.A. § 22 (1973).

Service of process under the statute is valid if made in accordance with the laws of the forum. *Aro Mfg.,* 352 F.2d at 403. Although this case is not concerned with service of process, "service of process is the vehicle by which the court may obtain jurisdiction." *Id.* at 402. Additionally, even though jurisdiction over corporate defendants is statutorily authorized, the court must also find that the defendant has also satisfied the minimum contacts requirement of *International Shoe. See Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1194 (D.D.C.1984).

■ To resolve questions of personal jurisdiction, it is necessary to consider whether the principles of specific or general jurisdiction apply. Specific jurisdiction exists when the plaintiff's claim arises directly from, or relates to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *Sandstrom v. Chemlawn Corp.,* 904 F.2d 83, 88 (1st Cir.1990). General jurisdiction occurs when the plaintiff's claims do not arise from, nor are they directly related to the defendant's contacts with the state. *Helicopteros,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9; *Sandstrom,* 904 F.2d at 88. The focus here is on general jurisdiction since the plaintiff's claims do not arise out of, or really have anything to do with the defendants' contacts with Rhode Island.

■ To establish general personal jurisdiction, the plaintiff must show that each defendant maintains systematic and continuous contacts with Rhode Island such that it would not offend traditional notions of fair play and substantial justice to exercise jurisdiction over that defendant. *Donatelli v. National Hockey League,* 893 F.2d 459, 465 (1st Cir.1990). The minimum contacts standard for general jurisdiction requires more stringent relationships with a forum than are required for specific jurisdiction. *Glater v. Eli Lilly & Co.,* 744 F.2d 213, 216 (1st Cir.1984).

**B.** *Minimum Contacts*

**1. National Football League**

■ The NFL is an unincorporated, not-for-profit association which maintains its only place of business in New York City. It is comprised of 28 independently owned member clubs. It serves primarily as a regulatory and administrative body governing the activities of its 28 member clubs.

The NFL maintains the following contacts with Rhode Island. First, it has designated Rhode Island as part of the Patriots' exclusive territory. Second, it maintains a banking relationship with Fleet National Bank (Fleet) located in Providence, Rhode Island. Fleet is a member of a banking coalition which has agreed to provide the NFL with a $150,000,000.00 line of credit. This credit allowed the NFL to establish a strike protection fund to protect its member teams in the event of a players' strike. Fleet also serves as the primary banking institution for the Patriots. The NFL conducts many wire transactions with the Patriots' Fleet account. For example, all of the revenues generated from the sale of play-off and Super Bowl tickets in Rhode Island is sent to the NFL via the Fleet account.

Third, during preseason training, the NFL maintains regular contact with and regulates the Patriots training camp located at Bryant College in North Smithfield, Rhode Island.

Fourth, NFL players and coaches occasionally travel to and from Theodore Francis Green (T.F. Green) Airport in Rhode Island to the Patriots' home playing field in Massachusetts. Fifth, NFL television and radio broadcasting rights and other merchandise is sold in Rhode Island. Finally, in 1990, the NFL conducted lobbying activities involving the Rhode Island Legislature.

These contacts taken seriatim do not constitute sufficient contacts to satisfy the minimum contacts requirements of *International Shoe.* First, the NFL's designation of Rhode Island as part of the Patriots exclusive territory is not enough to establish general *in personam* jurisdiction over

it. *Donatelli v. National Hockey League*, 893 F.2d 459, 470 (1st Cir.1990). Second, maintenance of bank accounts within a forum does not constitute the type of systematic and continuous contacts needed to establish general jurisdiction. *American Express Int'l Inc. v. Mendez–Capellan*, 889 F.2d 1175, 1179 (1st Cir.1989). The First Circuit held in *American Express* that banking transactions provide an insignificant basis upon which to find general jurisdiction. *Id.*

Third, the NFL's contacts with the Patriots' preseason training camp lacks the element of purposeful availment needed to invoke general jurisdiction. The NFL had no control over the Patriots' decision to locate its preseason training camp in Rhode Island. Here, the NFL is in very much the same position as was the trust company in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In *Hanson* the Settlor executed a trust in Delaware. 357 at 238, 78 S.Ct. at 1231. Thereafter, she moved to Florida. *Id.* The Trust Company continued to correspond with the Settlor even after she moved to Florida. *Hanson*, 357 U.S. at 252, 78 S.Ct. at 1239. Upon the Settlor's death, Florida attempted to exercise jurisdiction over the Delaware Trust Company. *Hanson*, 357 U.S. at 243, 78 S.Ct. at 1234. The Supreme Court held that Florida did not have jurisdiction over the Trust Company because it had not purposefully established contacts with that forum. *Id.* at 253–54, 78 S.Ct. at 1239–40. The court went on to say that the activities of the Settlor and other third parties could not be used to satisfy the minimum contacts requirements of the Trust Company. *Id.* at 253, 78 S.Ct. at 1239. In this case, the Patriots unilaterally chose to locate its camp in Rhode Island and, as a result, the NFL as its governing body had no choice but to extend its regulatory arm into Rhode Island. Following the reasoning of *Hanson*, the NFL's regulation of the Patriot training camp is not enough to establish general *in personam* jurisdiction over this defendant. *Hanson*, 357 U.S. at 253–54, 78 S.Ct. at 1239–40; *see also Donatelli*, 893 F.2d at 470–71.

Fourth, travel between the Patriots playing field and Rhode Island's airport by NFL member club players and coaches can not be used to satisfy the minimum contacts of the NFL itself. The decision to patronize T.F. Green Airport and various Rhode Island ground transportation services is a unilateral decision of the clubs involved. To establish jurisdiction over the NFL, the court must consider only its contacts or those contacts authorized by it. *Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873. The unilateral conduct of a third party is an inappropriate basis for establishing jurisdiction over a defendant. *Id.*

Fifth, the sale of tickets, merchandise, and broadcasting rights within a state does not establish general jurisdiction. *Donatelli*, 893 F.2d at 470–71. "[W]here the league itself has no 'continuous and systematic general business contacts' with the forum, (cite omitted) and the asserted cause of action is entirely unrelated to telecasts" or ticket sales, these transactions themselves "form too slippery a foothold" to establish [general] personal jurisdiction over the [NFL]. *Id.* at 471.

Sixth, the "government contacts exception" precludes an establishment of personal jurisdiction based on the NFL's lobbying activities involving the Rhode Island Legislature. The government contacts exception is applied in cases where a plaintiff attempts to establish jurisdiction over a nonresident defendant whose sole contact with the forum is predicated on contact with a branch of the United States Government. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). A basic premise of this exception is that the right to petition government, local or national, is a right which cannot be abridged by local governments. *See United Mine Workers v. Illinois State Bar Assn.*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967). Using government contacts to establish personal jurisdiction directly undermines the right to petition as guaranteed by the Constitution. *Id.*

Finally, even though the NFL maintains some contacts with Rhode Island, these

contacts viewed cumulatively are still not enough to establish general jurisdiction. Establishing general jurisdiction over a defendant requires more than simply counting the defendants contacts with the forum. *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir.1985). There must be evidence that the defendant purposefully availed itself of the privilege of conducting activities within the state. *Id.* The defendant's conduct must be such that it would reasonably anticipate being haled into court in the forum. *Id.* Here, many of the NFL's contacts with Rhode Island lack the element of purposeful availment. Even where the NFL has purposefully availed itself of conducting business in Rhode Island, for example—banking transactions with Fleet and ticket sales, these contacts are not of the kind which the defendant would reasonably anticipate being hauled into court to defend matters totally unrelated to its other contacts with the forum.

The NFL maintains no office, agent for service of process, license to do business, telephone listing, bank account or post office box in Rhode Island. The league owns no real or personal property in the state nor does it pay any taxes to the state. Consequently, the NFL's contacts with Rhode Island are not systematic and continuous enough to establish general jurisdiction over it.

### 2. Defendant NFL Member Clubs

■ Apart from the Patriots, none of the member clubs maintain any systematic and continuous contacts with Rhode Island. First, while it is true that some, if not all, of the defendant clubs travel to and from T.F. Green airport utilizing ground transportation provided by Rhode Island businesses, these contacts are not sufficient to establish jurisdiction over the defendants. *Wood v. Angel*, 707 F.Supp. 81 (D.R.I. 1989). This court held in *Wood* that "isolated trips to Rhode Island to accompany a relative, or to consult an attorney, defend a suit, and visit one's child simply do not constitute 'continuous and systematic' contacts with this forum." *Id.* at 84. Common sense directs that this same conclusion would be applied to occasional trips to the state to utilize its airport and associated ground transportation services.

Second, football games involving the defendant clubs are broadcast into the state over network and cable stations. These telecasts, however, are not sufficient to establish general jurisdiction over the defendant clubs where plaintiff's claim has absolutely nothing to do with the telecasts. *Donatelli*, 893 F.2d at 471 (citing *Zimmerman v. United States Football League*, 637 F.Supp. 46, 47–48 (D.Minn.1986) (television broadcasts do not create general jurisdiction over league or its member teams)); *see also Manton v. California Sports, Inc.*, 493 F.Supp. 496, 497–98 (N.D.Ga.1980) (television broadcasts into state or receipt of monies therefrom do not establish general jurisdiction). Although Rhode Island residents may be able to view the success or failure of these football teams on their respective televisions receivers, the teams' performances elsewhere have no significant jurisdictional consequences.

Finally, the receipt of monies generated from ticket sales in Rhode Island and transacting business with Rhode Island banks, are not enough to establish jurisdiction over the defendant clubs where the claim does not arise out of the defendants' contacts with the state. *Donatelli*, 893 F.2d at 470.

There is also no basis for jurisdiction over these corporate defendants under the Clayton Act. Under the Act, the court must first determine whether any of the defendants are inhabitants of Rhode Island. *Aro Mfg.*, 352 F.2d at 404. "The word inhabitant is synonymous with resident." *Id.* A corporation is considered an inhabitant of its state of incorporation. *Id.* None of the defendant clubs were incorporated in Rhode Island, and, therefore, they are not inhabitants of this State. Secondly, the court must determine whether any of the defendants are "found" or "transact business" within this forum. *Id.* "A corporation must engage in greater activities to be 'found' within a district than it must to be 'transacting business' there." *Chrysler Corp.*, 589 F.Supp. at 1195 (citing

*Grappone, Inc. v. Subaru of America, Inc.*, 403 F.Supp. 123, 128 (D.N.H.1975)). The pertinent question then is whether the defendants are found within this forum. To be found in the forum, a corporation "must be present there by its officers and agents carrying on the business of the corporation." *Aro Mfg.*, 352 F.2d at 404. None of the defendant clubs are "found" in this forum carrying on their business activities.

### 3. Defendants Rozelle and Tagliabue

▆ Jurisdiction over these defendants is based on the Rhode Island long arm statute. Under federal anti-trust law, an individual employee may be liable for illegal corporate acts which that employee has participated in or authorized. *See Clayton Act*, 15 U.S.C.A. § 24 (1973). However, before a state can exercise jurisdiction over the employee, there must exist some minimum contacts between the forum and the individual employee. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 10 (1st Cir.1990) (citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906–07 (1st Cir.1980); *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir.1988). The plaintiff has not established any contacts between these particular defendants, as individuals, and the forum. There is no basis for an assertion of jurisdiction.

### C. *Venue*

▆ In anti-trust litigation, venue may be established under the Clayton Act or the general venue statute, 28 U.S.C.A. § 1391(b) (Supp.1991). *Delong*, 840 F.2d at 855. The Clayton Act provides that venue is proper where the "defendant resides or is found or has an agent." 15 U.S.C.A. § 15 (1973). Additionally, the general venue statute provides that in nondiversity cases, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Where there are multiple defendants, venue must be proper as to every defendant. In this case, venue is lacking as to each and every defendant. First, none of the defendants reside in this forum. Second, as defined *supra*, none of the defendants are found in this forum. Third, none of the defendants have an agent in this forum. An agency is deemed to exist where a person or entity acts to carry on the business of another on that other's behalf and subject to that other's control and consent. Restatement (second) of Agency § 1 (1957); *see also In re Chicken Antitrust Litigation*, 407 F.Supp. 1285, 1299 (N.D.Ga.1975). Even though the Patriots remit funds to the NFL and the member clubs because of ticket sales in Rhode Island, this activity does not constitute "continuously doing business" on behalf of these defendants subject to their control. There is no evidence indicating that these defendants may dictate the manner or method by which these tickets are to be sold. Finally, venue can not be established under the general venue statute which allows venue where the "claim arose". The fact is that the plaintiff's cause of action did not arise out of any of the defendants' contacts with Rhode Island. As much as one might wish this contest to be conducted on a Rhode Island playing field, the scheduled activities of the participants does not provide a basis for doing so. Based on the facts, venue does not exist in Rhode Island.

### D. *Transfer*

▆ Although this court lacks *in personam* jurisdiction and venue over the defendants, it may, in the interests of justice, transfer the case under 28 U.S.C.A. 1361 (1976) or 28 U.S.C.A. 1406(a) (1976) [2] to a

---

**2.** Section 1361 of the United States Code Annotated provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ...

could have been brought at the time it was filed or noticed....

28 U.S.C.A. § 1361 (1976).

Section 1406(a) of the United States Code Annotated provides:

> The district court of a district in which is filed a case laying venue in the wrong division

court in which venue and jurisdiction would be proper. *Resolution Trust Corp. v. Westgate Partners, Ltd.,* 937 F.2d 526, 532 (10th Cir.1991). Because there has been substantial discovery conducted in this case, it would be in the interest of justice to transfer, rather than dismiss it. The court, therefore, orders transfer of this action to the United States District Court for the District of Massachusetts since all defendants have agreed to submit to personal jurisdiction and venue there.

or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C.A. § 1406(a) (1976).

Section 1406 has been interpreted to allow transfer of a case in situations where the court lacks personal jurisdiction over the parties. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962).