An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THOMAS URBANSKI; AND KATHLEEN URBANSKI, INDIVIDUALLY AND AS HUSBAND AND WIFE, Appellants, vs. NATIONAL FOOTBALL LEAGUE, A DELAWARE CORPORATION, Respondent. | No. 61524 **FILED** JAN 0 8 2015 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY S. Young DEPUTY CLERK |
| ADAM BERNARD JONES, AN INDIVIDUAL, Appellant, vs. THOMAS URBANSKI AND KATHLEEN URBANSKI, INDIVIDUALLY, AND AS HUSBAND AND WIFE; AND AARON CUDWORTH, AN INDIVIDUAL, Respondents. | No. 61732 |

*ORDER OF AFFIRMANCE*

These are consolidated appeals from (1) a district court order dismissing the National Football League (NFL) and its owners for lack of personal jurisdiction, and (2) a district court judgment in a personal injury action. Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh and Gloria Sturman, Judges.

Adam "Pacman" Jones—at the time a professional football player for the Tennessee Titans—was in Las Vegas during the NBA All-Star weekend in February 2007. While in Las Vegas, Jones and a group of friends were invited to a strip club. At the strip club, Jones had a bag of

15-00848

money he was using for tipping. At approximately 4:30 a.m., two female dancers began fighting over tip money, giving rise to some sort of melee. Although there are several contradictory versions of what exactly occurred, these disputed facts are inapplicable to the issues on appeal. In the end, after Jones and his entourage had been removed from the club, club security officers, Aaron Cudworth and Thomas Urbanski, were both shot by Arvin Edwards.[1] Cudworth and Urbanski survived the shooting.

Months after the shootings, Cudworth, Urbanski, and Urbanski's wife filed separate complaints against Jones and several other defendants in district court. Additionally, the Urbanskis filed claims against the National Football League (NFL) asserting causes of action for negligent hiring, retention and supervision, and respondeat superior. The Cudworth and Urbanski cases were consolidated.

Prior to trial, the district court dismissed the NFL for lack of personal jurisdiction, finding that it possessed neither specific nor general jurisdiction over the NFL. The Urbanskis now appeal this dismissal.

During the trial, the district court denied several of Jones' proposed jury instructions. These included instructions regarding defaulted defendants, three instructions regarding civil conspiracy,

---

[1]The relationship between Edwards and Jones is unclear. It was alleged that Edwards was Jones' friend, and that he shot Cudworth as a favor to Jones, and later solicited money from Jones for the shooting. However, when Jones initially talked to police he did not reference Edwards. Jones later cooperated in the investigation against Edwards in exchange for a plea deal in his criminal case. Jones maintained that he had never met Edwards and that he was a victim of extortion. Ultimately, while cooperating with LVMPD, Jones wired money to Edwards through intermediaries, allowing LVMPD to arrest Edwards.

 

intentional infliction of emotional distress (IIED), battery, assault, and "[w]ords alone." Accordingly, Jones objected to the jury instructions used instead.

After the trial, the jury found Jones liable for all causes of action asserted by Cudworth, including (1) assault, (2) battery, (3) false imprisonment, and (4) IIED, awarding $1,000,500 in compensatory damages and $300,000 in punitive damages. Regarding the Urbanskis, the jury found Jones *not* liable for assault or battery, but found Jones liable for IIED. The jury awarded the Urbanskis damages as follows:

- past medical expenses: $1,728,518.79
- past care: $1,101,096.65
- future care: $863,320.09[2]
- past lost income: $142,625.00
- future lost income: $424,858.00
- household services: $204,862.00
- past pain and suffering: $3,000,000.00
- future pain and suffering: $3,000,000.00.

Additionally, the jury awarded Kathleen Urbanski $750,000 for loss of consortium, but did not award the Urbanskis any punitive damages. Following both the initial verdict and the punitive damages verdict, Jones polled the jurors. The jury was dismissed on June 15, 2012.

---

[2]The future care amount was added by the district court on a post-verdict motion to modify the jury verdict. The district court found that Jones had stipulated to the amount of future care, as determined by the worker's compensation carrier, and that the amount was inadvertently omitted from the verdict form.

Shortly thereafter, Jones filed a countermotion for remittitur, or in the alternative a motion for a new trial, in response to the Urbanskis' motion for additur. Then Jones filed a nearly identical motion for remittitur, or in the alternative a motion for a new trial. The district court denied both Jones' countermotion and motion. Jones now appeals the jury verdict.

*The district court did not err in dismissing the NFL for lack of personal jurisdiction*

On appeal, the Urbanskis argue that the district court possessed both general and specific jurisdiction over the NFL. We disagree.

*Standard of review*

"[T]he plaintiff has the burden of introducing competent evidence of essential facts which establish a prima facie showing that personal jurisdiction exists." *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 743 (1993) (internal quotations omitted). Thus, the district court does not act as a fact finder, but rather "accepts properly supported proffers of evidence by a plaintiff as true." *Id.* at 693, 857 P.2d at 744 (internal quotations omitted). "Once a prima facie showing is made, the plaintiff bears the burden at trial to prove jurisdiction by a preponderance of evidence." *Viega GmbH v. Eighth Judicial Dist. Court*, 130 Nev. ___, ___, 328 P.3d 1152, 1156 (2014). "As a question of law, the district court's determination of personal jurisdiction is reviewed de novo . . . ." *Id.*

"To obtain jurisdiction over a non-resident defendant, a plaintiff must show: (1) that the requirements of the state's long-arm statute have been satisfied, and (2) that due process is not offended by the exercise of jurisdiction." *Trump*, 109 Nev. at 698, 857 P.2d at 747.

Nevada's long-arm statute, NRS 14.065, extends to the outer reaches of due process, therefore this seemingly two-step analysis is collapsed into a single inquiry regarding whether a court's exercise of jurisdiction over a nonresident defendant would offend due process. *Trump*, 109 Nev. at 698, 857 P.2d at 747.

"Due process requires minimum contacts between the defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotations omitted). "The defendant must have sufficient contacts with the forum such that he or she could reasonably anticipate being haled into court there." *Id.* at 699, 857 P.2d at 748 (internal quotations omitted). "[P]ersonal jurisdiction occurs in two forms: general and specific." *Dogra v. Liles*, 129 Nev. ___, ___, 314 P.3d 952, 955 (2013).

*The district court did not err in finding that it lacked general jurisdiction over the NFL*

"A court may exercise general jurisdiction over a foreign company when its contacts with the forum state are so 'continuous and systematic as to render [it] essentially at home in the forum State.'" *Viega*, 130 Nev. at ___, 328 P.3d at 1156-57 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, courts generally consider their "'[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224

(9th Cir. 2011) (alteration in original) (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Here, the Urbanskis argue that the NFL's contacts with Nevada are sufficiently continuous and systematic, such that it is essentially at home in Nevada. The Urbanskis point to several NFL operations, including (1) the NFL's merchandising "stream of commerce" activities in Nevada; (2) the NFL's interactive website, including paid-for fantasy football; (3) the NFL network and DirecTV "Sunday Ticket" television products; (4) the NFL's recruiting of Nevada players; and (5) the NFL's "Punt, Pass and Kick" competition. The NFL does not dispute the existence of the facts asserted by the Urbanskis; rather, the dispute lies in whether such facts constitute a continuous and systematic presence in Nevada.

The seminal general jurisdiction case is *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). *See Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2856. In *Perkins*, the Supreme Court determined that an Ohio court was entitled to exercise general jurisdiction over a Philippine corporation when the corporation's president maintained an office in Ohio and directly conducted its general business activities on behalf of the company from Ohio. 342 U.S. at 447-48. These activities included maintaining company files, carrying on correspondence, engaging an Ohio bank to act as a transfer agent, distributing salary checks, and holding

directors' meetings in Ohio. *Id.* In short, the corporation's president "'ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business"—which was sufficient to warrant the exercise of personal jurisdiction over the Philippine corporation. *Id.* at 438.

On the other hand, in *Helicopteros*, a Colombian corporation, which was in the business of providing helicopter transportation throughout South America, was sued in a Texas state court for claims arising out of a helicopter crash that occurred in Peru. 466 U.S. at 409-11. Prior to the crash in Peru, the Colombian corporation had various ancillary contacts with Texas prior to the filing of the suit, such as holding several contract negotiations in Texas, holding pilot training courses in Texas, and purchasing helicopter parts in Texas valued at approximately $4 million. *Id.* at 410-11. The Supreme Court concluded that Texas courts could not exercise jurisdiction over the foreign helicopter service corporation largely because the corporation had never sold products or solicited business in Texas, never maintained an office or other establishment in Texas, and had never performed any of its primary business operations in Texas. *Id.* at 418 ("[M]ere purchases [made in Texas], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). Similarly, in *Goodyear*, the Supreme Court concluded that North Carolina courts lacked general jurisdiction over a tire manufacturer because "[u]nlike the defendant in *Perkins*, whose sole wartime business activity was conducted in Ohio, [Goodyear's foreign subsidiary was] in no sense at home in North Carolina." 564 U.S. at ___, 131 S. Ct. at 2857.

*NFL's merchandising activities in Nevada*

The Urbanskis argue that the NFL has the exclusive right to direct the sale of NFL-related merchandise in any location, including Nevada. Thus, the Urbanski's argue that the NFL intentionally directs its products into Nevada and directly profits from those sales.

However, the United States Supreme Court recently clarified that the "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction," but not general jurisdiction. *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2855; *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 203 n.5 (D.C. Cir. 1981) (defendants' marketing arrangements, although "adequate to permit litigation of claims relating to [their] introduction of . . . wine into the United States stream of commerce . . . would not be adequate to support general, all purpose adjudicatory authority" (internal quotations omitted)).

Thus, the Urbanskis' use of the term "stream of commerce" is misapplied here because (1) they are not arguing for specific jurisdiction, and (2) this is not a situation in which a good reached an untargeted forum state. *See Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2856 ("Under the sprawling view of general jurisdiction urged by respondents . . . any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed"). Thus, in light of the Supreme Court's recent clarification on this point, we conclude that this factor does not support a finding of general jurisdiction. *Id.* ("A corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." (internal quotations omitted)).

*The NFL's website*

The Urbanskis argue that the NFL has availed itself of jurisdiction via its "interactive" website. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). The Urbanskis argue that the NFL's website is sufficiently interactive to allow Nevada courts to exercise jurisdiction, pointing to a number of the website's interactive and commercial features.

But similar to the "stream of commerce" issue above, the Urbanskis' reliance on the NFL's website, regardless of the level of interactivity, is misplaced because courts have only considered a defendant's website when determining whether it has *specific* jurisdiction over the defendant. *See, e.g., Mavrix Photo*, 647 F.3d at 1227 (explaining that the *Zippo* sliding-scale approach, the primary test for assessing jurisdiction from a website, "'should be of little value in a general jurisdiction analysis'" (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1073.1, at 331 (3d ed. 2002))); *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (*Zippo* test "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction"); *Cybersell*, 130 F.3d at 418.

Essentially, if we were "[t]o permit the exercise of general jurisdiction based on the accessibility in the forum of a non-resident interactive website [such a conclusion] would expose most large media entities to nationwide general jurisdiction." *Mavrix Photo*, 647 F.3d at 1227. This would be entirely "inconsistent with the constitutional requirement that the continuous corporate operations within a state be so substantial and of such a nature as to justify suit against [the nonresident

defendant] on causes of action arising from dealings entirely distinct from those activities." *Id.* (internal quotations omitted). As a result, this factor does not support a finding of general jurisdiction.

*The NFL Network and DirecTV Sunday Ticket*

The Urbanskis argue that the NFL's contract negotiations to deliver television programming directly into Nevada homes and businesses, coupled with the NFL's revenues from such programming is sufficient to trigger general jurisdiction.

In response, the NFL argues that several courts have considered similar arguments, and have rejected the idea that a television broadcast can establish general jurisdiction. *See Sullivan v. Tagliabue,* 785 F. Supp. 1076, 1080 (D.R.I. 1992) ("'[W]here the league itself has no continuous and systematic general business contacts with the forum, and the asserted cause of action is entirely unrelated to telecasts' or ticket sales, these transactions themselves 'form too slippery a foothold' to establish [general] personal jurisdiction over the [NFL]." (alterations in original) (internal quotations omitted) (quoting *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 471 (1st Cir. 1990))); *Zimmerman v. U.S. Football League,* 637 F. Supp. 46, 48 (D. Minn. 1986) ("Where a plaintiff's cause of action does not arise from television broadcasts into a state, the broadcasts do not constitute sufficient contacts for personal jurisdiction."). We agree with the NFL.

Much like with a defendant's website, subjecting a business to general jurisdiction solely based on national television broadcasts would "expose most large media entities to nationwide general jurisdiction." *See Mavrix Photo,* 647 F.3d at 1227. Such a finding would be inconsistent with the constitutional requirement that a defendant's operations be so "continuous and systematic as to render [it] essentially at home in the

forum State." *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851 (internal quotations omitted). As a result, we conclude that this factor does not support a finding of general jurisdiction.

> *NFL's recruiting activities and "Punt, Pass and Kick" competition*

The Urbanskis argue that scouts from virtually every NFL team have traveled and continue to travel to Nevada to recruit future NFL players from Nevada's university teams. Additionally, the Urbanskis point to the NFL's annual "Punt, Pass and Kick" competition located in Mesquite and Las Vegas.

Here, these activities may help support a finding of general jurisdiction, but "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). This case is similar to *Sullivan*, 785 F. Supp. 1076, in which an owner of the New England Patriots sued the NFL in Rhode Island challenging the NFL's alleged block of the sale of a portion of the franchise. *Id.* at 1077-78. The court determined that the NFL's contacts were not sufficiently continuous and systematic in Rhode Island, even where the NFL (1) maintained a line of credit with a Rhode Island bank, (2) regulated an NFL franchise's training camp held in Rhode Island, (3) had players and coaches who traveled through Rhode Island, (4) sold radio and television broadcasting rights within Rhode Island, (5) sold merchandise within Rhode Island, and (6) lobbied the Rhode Island legislature. *Id.* at 1079-81.

Thus, we conclude that if the NFL's in-state activities were coupled with more substantial contacts, they could support a finding of general jurisdiction. But in this case, there are no facts similar to those in

*Perkins* such that the NFL maintained an approximate physical presence and would essentially be "at home" in Nevada. *See Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2857. In light of all of the NFL's contacts with the State of Nevada, we hold that the district court did not err in ruling that it did not have general jurisdiction over the NFL.[3]

*The district court did not err in finding that it lacked specific jurisdiction over the NFL*

"Unlike general jurisdiction, specific jurisdiction is proper only where 'the cause of action arises from the defendant's contacts with the forum.'" *Dogra v. Liles*, 129 Nev. ___, ___, 314 P.3d 952, 955 (2013) (quoting *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 699, 857 P.2d 740, 748 (1993)); *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (internal quotations omitted)). Nevada courts may exercise specific jurisdiction over a nonresident defendant if the defendant (1) "purposefully avails himself or herself of the protections of Nevada's laws, or purposefully directs her conduct towards Nevada"; and (2) "the plaintiff's claim actually arises from that purposeful conduct" within

---

[3]Additionally, the NFL's prior unrelated lawsuits in Nevada do not create general jurisdiction. *See Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1231 (D. Colo. 2009) (finding that a defendant's filing of unrelated lawsuits was insufficient to confer general jurisdiction); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) (same)).

Nevada. *Dogra,* 129 Nev. at ___, 314 P.3d at 955 (internal quotations omitted).

Here, even if the NFL purposefully availed itself toward Nevada, the Urbanskis' claims do not arise from that purposeful conduct. The Urbanskis contend that Jones is an employee of the NFL 100 percent of the time; however, there is nothing in the record to indicate any sort of "on the clock" employee or agency relationship regarding Jones' late night activities in Las Vegas. *See Myers v. Bennett Law Offices,* 238 F.3d 1068, 1073 (9th Cir. 2001) (establishing that the acts of an employee with authority to act on behalf of the employer can be imputed to the employer for the court's specific jurisdiction analysis); *see also Dogra,* 129 Nev. at ___, 314 P.3d at 955. Thus, Jones' actions cannot be imputed upon the NFL, and the Urbanskis have failed to make a prima facie showing of jurisdictional facts. Accordingly, the district court did not err in finding that it did not have specific jurisdiction over the NFL.[4]

---

[4]Additionally, the district court did not err in refusing the Urbanskis' request for additional jurisdictional discovery. The Urbanskis failed to demonstrate how additional discovery would supplement their jurisdictional allegations. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1283 (Fed. Cir. 2005) ("[D]iscovery is appropriate where the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." (internal quotations omitted)).

*Jones failed to preserve his argument regarding the jury verdict*

Jones argues on appeal that the jury verdict is inconsistent because the damage awards for Cudworth and Urbanski do not properly correspond to the jury's findings of liability, both factually and as a matter of law. As a result, Jones requests this court to reverse the judgment on the verdict and order a new trial with further instruction on how to avoid this dilemma in the future. However, we conclude that Jones failed to preserve this issue for appeal.

"This court upholds a jury verdict if there is substantial evidence to support it, but will overturn it if it was clearly wrong from all the evidence presented." *Soper v. Means*, 111 Nev. 1290, 1294, 903 P.2d 222, 224 (1995). However, "[a] point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal." *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

Parties have a duty to object to inconsistent jury verdicts before the jury is dismissed. *Eberhard Mfg. Co. v. Baldwin*, 97 Nev. 271, 272-73, 628 P.2d 681, 682 (1981); *see also Brascia v. Johnson,* 105 Nev. 592, 596 n. 2, 781 P.2d 765, 768 n.2 (1989) (concluding that where inconsistent verdicts are returned, a party must challenge the verdicts before the jury is discharged and "failure to object while the jury [is] still available and able to clarify its verdict constitute[s] a waiver"); *cf. Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1111, 197 P.3d 1032, 1038 (2008) (recognizing that an exception exists to this rule if a district court attempts to enter a general verdict which obviously contradicts answers to special interrogatories under NRCP 49(b)). In *Eberhard*, a case concerning injuries to a six-year-old boy from contact with an open high-voltage electrical fuse box, the jury found the owner of

the fuse box liable for negligence, the designer and manufacturer of the fuse box locking mechanism liable for strict products liability, but did not find liability for the manufacturer's distributor. 97 Nev. at 272, 628 P.2d at 681-82. The plaintiff moved for judgment notwithstanding the verdict, and the liable manufacturer motioned for a new trial, however, neither took this action prior to the jury being dismissed. *Id.* at 272, 628 P.2d at 682. Despite the confusing verdict, post-judgment motions, and plaintiff's submission of "alternative verdict forms which, if given, would have prevented the claimed inconsistent verdicts," this court still concluded that both sides "waived the ground of an inconsistent verdict in support of their motions, as a result of their failure to timely object to the filing of the verdict or to move that the case be resubmitted to the jury." *Id.* at 272-73, 628 P.2d at 682. The fact that the contested jury verdicts might have been inconsistent as a matter of law was irrelevant. *Id.* The "primary objective of the promotion and efficient administration of justice," took precedent. *Id.* at 273, 628 P.2d at 682.

Here, Jones failed to object to the alleged inconsistent jury verdicts prior to the jury's dismissal. The district court's denial of Jones' proposed jury instructions, Jones' objection to the implemented jury instructions, Jones' polling of the jurors following the verdict, Jones' countermotion for remittitur or in the alternative for a new trial filed after the jury was dismissed, and Jones' motion for remittitur or in the alternative for a new trial filed after the jury was dismissed are inconsequential. Further, the exception from *Lehrer* is inapplicable to the facts here. Thus, we conclude that Jones' waived his right to appeal on

inconsistent jury verdict grounds, because he failed to object before the jury had been discharged.[5]

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[5]We have considered the parties' remaining arguments and conclude that they are without merit.

cc: Hon. Jessie Elizabeth Walsh, District Judge
Hon. Gloria Sturman, District Judge
Ara H. Shirinian, Settlement Judge
Kevin Lee Smith
Law Office of Lisa Rasmussen
Kolesar & Leatham, Chtd.
Chesnoff & Schonfeld
Thorndal Armstrong Delk Balkenbush & Eisinger/Las Vegas
Eighth District Court Clerk