Mark P. DONALDSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 98–10362–BC.

United States District Court, E.D. Michigan, Southern Division.

June 23, 2003.

Mark P. Donaldson, Whitmore Lake, MI, for plaintiff.

Michael J. Hluchaniuk, Bay City, MI, for defendant.

### OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

LAWSON, District Judge.

The plaintiff, Mark P. Donaldson, is an unsuccessful applicant for a grant from the federal government under the Rural Business Enterprise (RBE) grant program, now administered through the Farm Services Agency (and previously through the Farmers Home Administration), an agency within the United States Department of Agriculture (USDA). The RBE grant program is intended to "facilitate development of small and emerging private businesses" by providing grants to "public bodies and private non-profit corporations," *see* 7 U.S.C. § 1932(c)(1) (1996), that will use the funds to best achieve Congressional objectives, in the judgment of the Secretary of Agriculture. Since the funds available under this program are not limitless, applicants must compete for them by convincing the program administrators of the worthiness and effectiveness of their proposals, and the program administrator, in this case the USDA Regional Rural Development Manager, must exercise his or her judgment, as circumscribed by rules promulgated by the Secretary, in passing on applications. Unsuccessful applicants, after exhausting administrative remedies, may file a civil action in the United States District Court pursuant to the Administrative Procedures Act challenging an adverse decision. *See* 7 U.S.C. § 6999. The plaintiff here mounts a two-pronged attack against the Secretary challenging the unfavorable treatment of his pre-application for RBE grant funds: first, Donaldson contends that the Rural Development Manager did not properly apply the Secretary's point scoring system to his pre-application; and second, Donaldson claims that other contestants for the funds were ineligible for them. As part of the second prong of the attack, Donaldson seeks an injunction preventing the Secretary from engaging in certain practices and accepting grant applications from certain categories of applicants in the course of administering the RBE grant program in the future.

The case was referred by this Court's predecessor, the Honorable Victoria A. Roberts, to Magistrate Judge Charles E. Binder to hear and determine all pretrial matters within his authority. Now before the Court is Magistrate Judge Binder's Report and Recommendation that the defendant's motion for summary judgment be granted and the above-entitled case be dismissed with prejudice. The plaintiff filed timely objections to the recommendation, and the Court has conducted a *de novo* review of the matter in light of the magistrate's report and the objections filed as required by 28 U.S.C. § 636(b)(1)(B).

The Court finds that the Magistrate Judge correctly applied the governing law to the facts as disclosed by the administrative record, and therefore the Court will adopt the magistrate judge's Report and Recommendation, grant the defendant's motion for summary judgment, and dismiss the case.

I.

As previously mentioned, the plaintiff sought RBE grant funds from the USDA. Pursuant to USDA regulations, applicants seeking RBE grants must first file a pre-application. *See* 7 C.F.R. §§ 1942.311(a), 1942.2(a). The USDA then converts the information contained in the pre-application into "points" pursuant to a scoring system set forth in 7 C.F.R. § 1942.305(b)(3) and described in detail in the magistrate judge's report. To summarize, the regulations establish that the USDA shall assign points to an application based on certain criteria including the population of the area in which the grant project will be located, the economic conditions in the area, and the experience of the applicant in the type of activity proposed in the grant pre-application. Additionally, an applicant may receive points under two categories labeled "Other" and "Discretionary." Points are awarded under these categories if the applicant can demonstrate, among other things, that small business development will occur as a result of the grant. The points are added up and a final score is determined. The applicants whose pre-applications receive the most points are invited to file a formal application that will determine who receives the grant funds up to the available limits for that year. *See* 7 C.F.R. § 1942.2(c). Applicants who do not receive a sufficient number of points are invited to re-apply the next year.

Between 1996 and 1997, the plaintiff submitted three pre-applications to the USDA for RBE grants on behalf of three corporations of which he is the owner and president: Small Web America—Gaylord/Grayling; Small Web America—Isabella; and Small Web America—Central Michigan. The plaintiff sought the grants to expand the Internet and other like services, including high-speed data and video conferencing, to rural communities in Michigan. The USDA informed the plaintiff that his pre-applications were eligible to receive grants, but did not have the priority necessary for further consideration. The plaintiff was invited to inform the USDA if he wished to have his applications considered for grants in the future. The USDA also sent the plaintiff the point tally sheets indicating how many points he had received in each category for each of his applications. The plaintiff received a total of 90 points on his application for Small Web America—Gaylord/Grayling, 60 points on his application for Small Web America—Isabella, and 70 points for Small Web America—Central Michigan. To qualify for the RBE grants that year, the plaintiff needed a total score of at least 125 points, which was the cut-off point separating unsuccessful applicants and those given further consideration.

The plaintiff filed three administrative appeals of the unfavorable findings on his applications. The appeals were consolidated by the USDA and assigned to Hearing Officer David M. Craun. The plaintiff and the Secretary's representative each submitted written arguments to the hearing officer. The plaintiff argued, among other things, that his three pre-applications were improperly scored in the population, small business, and discretionary categories. The plaintiff had received zero points for each application under the discretionary category. Hearings were held on April 24, 1998 and June 10, 1998. The plaintiff presented his case and cross-examined the government's witnesses, including Donald Hehr, a director over the RBE grant program, and Mae Locke, an employee of the

USDA who reviewed the plaintiff's application. Mr. Hehr testified that the plaintiff's application was deemed to lack priority in part because the USDA determined that Internet services similar to what the plaintiff would be offering were already present in the areas the plaintiff wanted to establish his business. Ms. Locke testified that in determining the population criterion, she used the population for the county in which the plaintiff's business was located, not the population for the individual township where the business was based, and assigned points accordingly. The plaintiff at one point in the hearing asked Ms. Locke about scoring decisions made on other pre-applications and Ms. Locke refused to answer the questions on the grounds that such information was privileged under the Freedom of Information Act (FOIA).

On July 22, 1998, Hearing Officer Craun issued a written decision denying each of the plaintiff's three applications. The hearing officer determined that the USDA did not award the correct number of points to the plaintiff in the population category, finding that the USDA's methodology in considering the county's population, rather than the township where the business was located, was not in accordance with the regulations. The hearing officer, however, found that the other categories were properly scored and the applications were properly denied, since the additional points for the population category did not raise the plaintiff's score on any of his pre-applications above the 125–point cut-off.

The plaintiff then sought review by Norman G. Cooper, Director of the USDA National Appeals Division (NAD). On September 18, 1998, Director Cooper issued a written decision agreeing with the hearing officer's determination that the population category was improperly scored. Director Cooper, however, held that substantial evidence supported the findings of the hearing officer and that the applications were properly denied because the applications "would not have exceeded the 125 points necessary to qualify for further consideration even if [they] had been given the maximum 15 points for population." Director's Review Determination, Administrative Case Record at 313 [dkt # 19].

On December 23, 1998, the plaintiff filed a *pro se* complaint in this Court seeking a review of the USDA's decision, an action that is authorized by the Administrative Procedures Act. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). Judge Roberts entered an order referring the case to Magistrate Judge Binder on September 28, 1999. Following lengthy delays, the administrative record was prepared and sent to the Court. The defendant then filed a motion for summary judgment seeking affirmance of the decision of the Secretary, arguing that substantial evidence supports the administrative findings denying each of the plaintiff's three applications. The plaintiff answered the motion and argued that his applications were not scored in the same manner as other applicants. The plaintiff also argued that the hearing officer illegally withheld information and testimony during the administrative hearing and that the defendant's counsel committed perjury in the hearing.

Although the plaintiff did not specifically seek injunctive relief in his complaint, he filed a motion for a preliminary injunction, asking the Court to enjoin the government from awarding RBE grants to cooperatives, to enjoin the government from accepting or making a determination on pre-applications for RBE grants from cooperatives, to enjoin the government from using the Internet to state that RBE grants are

available for cooperatives, and to enjoin the government from giving any priority to cooperative applicants seeking RBE grants.

The magistrate judge filed his Report and Recommendation on December 30, 2002 recommending summary judgment of dismissal in favor of the government. Addressing the request for injunctive relief, the magistrate judge suggested that the plaintiff lacks standing to obtain the preliminary injunction that he requests, citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 45 F.3d 469, 471 (D.C.Cir.1995), a case relied on by the government. The magistrate judge did not provide any additional analysis on the standing issue, but does suggest that if the plaintiff is found to have standing, then he has failed to show a likelihood of success on the merits, citing *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), another case relied on by the government. The plaintiff has filed several other motions, which are addressed below.

## II.

### A.

As an initial matter, the Court observes that the case is before it on the defendant's motion for summary judgment, among others. The Court of Appeals for the Sixth Circuit has suggested, without deciding, that the use of the summary judgment procedure is inappropriate for judicial review of an administrative action under the Administrative Procedures Act. *See Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480 (6th Cir.1999). The Tenth Circuit has held that a motion for sum-

mary judgment is an inappropriate procedural device to review administrative decisions because it invites the district court to rely on evidence outside the administrative record. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579–80 (10th Cir. 1994). In that case, the Court stated that the district court is not exclusively a trial court but sometimes acts as an appellate court. It reasoned that since motions for summary judgment are "conceptually incompatible with the very nature and purpose of an appeal," the district court should be governed by the Federal Rules of Appellate Procedure. *Id.* at 1580.

In this case, the defendant argues that this Court should confine its inquiry to the administrative record. Although supplementation of the administrative record is appropriate in some cases, *see Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir.1997), the Court finds that it is neither necessary nor appropriate to consider affidavits outside of the administrative record or any information that was not available to the administrative decision makers in this case, except, perhaps, with respect to the plaintiff's claim for an injunction, to the extent that the plaintiff has standing to advance that claim.

Review of actions by an administrative agency is generally conducted under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* According to section 706 of the Act, a federal court must "hold unlawful and set aside agency action, findings and conclusions found to be .... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A).[1] *See GTE Midwest,*

1. Section 706 of the Administration Procedures Act, 5 U.S.C. § 706, states:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability

of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

*Inc. v. Fed. Communications Comm'n.,* 233 F.3d 341, 344 (6th Cir.2000). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Even though the analysis is deferential to the agency, the agency nonetheless must articulate a "rational connection between the facts found and the choice made." *Id.* (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). An abuse of discretion is found when, based on the evidence, the explanation offered for a particular outcome is unreasonable. *Perry v. United Food & Commercial Workers Dist. Unions 405 and 442,* 64 F.3d 238, 242 (6th Cir.1995).

An agency ruling that is contrary to law likewise must be set aside. A court may invalidate an agency adjudication or rule making if it is "inconsistent with the statutory mandate or frustrate[s] the policy that Congress sought to implement." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1350 (6th Cir.1994). "An agency which violates its regulations is acting contrary to law...." *Chrysler Corp., v. Schlesinger,* 412 F.Supp. 171, 177 (D.Del.1976), *vacated on other grounds sub nom Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *S. & S. Logging Co. v. Barker,* 366 F.2d 617, 624 n. 6 (9th Cir.

1966); *Delaware v. Bender,* 370 F.Supp. 1193, 1203 (D.Del.1974).

■ Thus, based on the administrative record this Court must first determine whether the determination of the USDA regional administrators, and the decision hearing officer, as modified by the Director of the USDA National Appeals Division, constitutes a final agency adjudication that is beyond its authorized scope, arbitrary and capricious, or otherwise contrary to law. The Court agrees with the magistrate judge that substantial evidence supports the findings of the USDA, and that none of the USDA's actions, either in the denial of the plaintiff's applications, or in the plaintiff's administrative appeals, were arbitrary or capricious. There is simply no evidence in the record that the USDA failed to consider all of the relevant factors or committed a clear error of judgment when scoring the plaintiff's applications for an RBE grant. The USDA appropriately interpreted, followed, and faithfully applied its regulations. The hearing officer allowed the plaintiff great leeway in presenting his grievances and in cross-examining the witnesses. There is nothing to suggest that there was a gross flaw in the process.

■ Although the plaintiff insists that this Court ought not to show deference to the USDA, the law commands otherwise, *see Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 122 S.Ct. 1155, 1159–60, 152 L.Ed.2d 167 (2002) ("The Secretary's

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this

title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

judgment that a particular regulation fits within this statutory constraint must be given considerable weight.") (citing *United States v. O'Hagan,* 521 U.S. 642, 673, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997)), especially where the agency has the broad discretion as it has in this case to determine which programs would most efficaciously advance Congress' purpose. *See Florida Key Deer v. Stickney,* 864 F.Supp. 1222, 1239 (S.D.Fla.1994) (finding that Congress gave the Federal Emergency Management Agency broad discretion to issue regulations and establish criteria to carry out the purposes of the National Flood Insurance Program); *Lee v. Resor,* 348 F.Supp. 389, 394 (M.D.Fla.1972) (finding that Congress had vested the United States Army Corp of Engineers with broad discretion in selecting the means for complying with the requirements of the National Environmental Policy Act). *See also Perkins v. Lukens Steel Co.,* 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) (stating that the interference of the courts with the performance of the ordinary duties of the executive branch of government would be productive of nothing but mischief). Furthermore, the plaintiff's argument that other pre-applications were scored improperly or that some applicants received points while the plaintiff's pre-applications did not receive points, does not result in an arbitrary or capricious decision by the USDA. The USDA determined the projects that have priority and which projects lack priority based on the promulgated guidelines. Although the plaintiff was competing for grant funds with others, only the plaintiff's pre-applications are before the Court in this administrative appeal. Their *relative* merit as against the other proposals is not a proper subject for review, especially when the other applicants are not before the Court to defend their own grant awards. *See Hansberry v. Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (holding that

adjudicating the rights of persons not made parties and properly brought before the court offends the Due Process Clause); *see also Int'l Ass'n of Machinists Nat. Pension Fund v. Dickey,* 808 F.2d 483, 485–86 (6th Cir.1987). Of course, the plaintiff may properly complain that he was singled out or treated differently than other applicants, resulting in his own pre-applications not receiving a fair evaluation. However, for the reasons previously stated, the Court agrees with the magistrate judge that the plaintiff received fair consideration and the Secretary's actions were not arbitrary and capricious or contrary to law.

Moreover, it is within the USDA's discretion to make the determination that, for example, a golf course on Mackinac Island State Park deserves higher funding priority than an Internet company in rural Michigan. If the Court were to examine all of the applications submitted for RBE grants and make its own determinations on which applications should receive funding, then the Court impermissibly would be arrogating to itself the authority properly conferred on an administrative agency, which is in a better position to make those determinations. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. The Court's responsibility is to examine the administrative record and determine if the agency has acted in accordance with law. As the record indicates, the USDA properly followed its procedures and regulations, no abuse of discretion occurred and judgment in favor of the defendant is, therefore, appropriate.

## B.

■ The magistrate judge's treatment of the plaintiff's request for an injunction presents a different question. The plaintiff objects to the determination that he lacks standing, and insists that he meets

the constitutional and prudential requirements set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is a critically important jurisdictional limitation because it is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560, 112 S.Ct. 2130. As such, standing is not subject to waiver and federal courts must consider standing even if the parties fail to raise it. *United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). To establish standing, a plaintiff must show (1) that the plaintiff has suffered an "injury in fact," (2) a causal connection between the injury and the conduct complained of, and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (citations omitted). When seeking injunctive relief against a government agency, the applicant also must demonstrate that "the interest sought to be protected [is] arguably ... within the zone of the interests protected by the statute in question." *Legal Assistance for Vietnamese Asylum Seekers*, 45 F.3d at 471.

Here, the plaintiff seeks to enjoin certain administrative aspects of a government aid program as applied to potential competitors for future grant applications, presumably on the theory that thinning out the competitive field will improve the plaintiff's chances to secure grant funds in the years to come. This strategy parallels the circumstances in *Dowling v. United States*, 476 F.Supp. 1018 (D.Mass.1979). There, the plaintiff brought suit against the Immigration and Naturalization Service and the Department of State under the Immigration and Naturalization Act claiming that the government approved and issued nonimmigrant visas to Canadian hockey referees "without full knowledge of the facts." *Id.* at 1020. The plaintiff was a former professional hockey referee who was unable to get a job as a referee with the National Hockey League (NHL) or the World Hockey Association (WHA) because there were no job openings due to the large number of referees working in both leagues. The plaintiff blamed his predicament in part on the Canadian referees who were coming into the United States on the nonimmigrant visas to referee hockey games. The government moved to dismiss the complaint on the grounds that the plaintiff did not have standing under the APA to challenge the government agency action in this case. The court found that

> [t]he Supreme Court has developed a two-pronged test to determine whether a plaintiff has the requisite standing under the APA. Under the first prong, which has its basis in the constitutional requirements of Art. III, a plaintiff must demonstrate that, in fact, he has suffered an injury which is fairly traceable to the challenged agency action and, further, that there is a substantial likelihood that the requested relief will remove the harm. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 44–46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 504–05, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). But, as the Court noted in *Simon*, "unadorned speculation will not suffice to invoke the federal judicial power." 426 U.S. at 44, 96 S.Ct. 1917. Under the second prong of the Court's APA standing test, which has its root in nonconstitutional, prudential notions, the plaintiff must show that the alleged injury was to an interest "arguably within the zone of interests to be protected or regulated by the statute ... in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

*Id.* at 1021. The court held that any harm the plaintiff suffered stemmed from the refusal of the NHL and WHA to employ him as a hockey referee, not from the decision of the government agency to grant nonimmigrant visas to Canadian referees. *Ibid.* The court also held that nothing in the case showed a substantial likelihood that the plaintiff would regain employment as a professional hockey referee if he were given the relief requested. *Ibid.* Therefore, the court found that the plaintiff did not have standing to challenge the agency action. *Ibid.*

■ Similarly, in this case, any harm the plaintiff suffers emanates from the refusal of the USDA to approve his preapplications for RBE grants, not from the decision of the USDA to confer RBE grants to cooperatives or other applicants whom the plaintiff contends are ineligible. Furthermore, the plaintiff has not shown that if the USDA ceased granting applications to cooperatives, his applications would win approval. In fact, the plaintiff seeks to enjoin the awards of *future* applications to cooperatives; he has not shown that he has submitted an application that is pending and is competing with other, allegedly ineligible applicants. Therefore, the plaintiff has not shown that he will suffer an injury in fact. If the USDA determined that the plaintiff's RBE grant application had higher priority, then it would likely approve the application regardless of whether cooperatives had also submitted applications. The magistrate judge correctly concluded that the plaintiff does not have standing to challenge the award of RBE grants to cooperatives or other applicants.

Furthermore, even if standing existed, the plaintiff's challenges are meritless. The plaintiff makes several allegations that the awarding of RBE grants to cooperatives violates federal regulations. First, he claims that an RBE grant for a gas line to the Michigan Apple Packers Cooperative was contrary to 7 C.F.R. § 1942.307(a).[2] The plaintiff reasons that an important purpose for the gas line is to provide a more economical means of drying the harvested fruit, and therefore runs afoul of the prohibition of using RBE

**2.** This regulation states:

[RBE grant f]unds will not be used: (1) To produce agriculture products through growing, cultivation and harvesting either directly or through horizontally integrated livestock operations except for commercial nurseries, timber operations or limited agricultural production related to technical assistance projects. (2) To finance comprehensive areawide type planning. This does not preclude the use of grant funds for planning for a given project. (3) For loans by grantees when the rates, terms and charges for those loans are not reasonable or would be for purposes not eligible under § 1942.306 of this subpart. (4) For programs operated by cable television systems .(5) To fund a part of a project which is dependent on other funding unless there is a firm commitment of the other funding to ensure completion of the project. (6) To pay for technical assistance as defined in this subpart which duplicates assistance provided to implement an action plan funded by the Forest Service (FS) under the National Forest–Dependent Rural Communities Economic Diversification Act for 5 continuous years from the date of grant approval by the FS. To avoid duplicate assistance, the grantee shall coordinate with FS and Rural Business–Cooperative Service (RBS) to ascertain if a grant has been made in a substantially similar geographical or defined local area in a State for technical assistance under the above program. The grantee will provide documentation to FS and RBS regarding the contact with each agency. Under its program, the FS assists rural communities dependent upon national forest resources by establishing rural forestry and economic diversification action teams which prepare action plans. Action plans are intended to provide opportunities to promote economic diversification and enhance local economies dependent upon national forest resources.

7 C.F.R. § 1942.307(a).

grant funds for the production of produce "through growing, cultivation and harvesting." The plaintiff has failed to develop his argument that drying or processing picked fruit constitutes "growing, cultivation and harvesting," and the USDA has obviously determined otherwise. That interpretation would not be unreasonable, and grants for such purposes would not contravene the applicable statute or regulation.

Next, the plaintiff claims that the RBE grant request from Mackinac Island State Park failed to meet the definition contained in 7 C.F.R. § 1942.304.[3] This regulation furnishes definitions for the RBE and other grant programs within the USDA. The plaintiff seems to contend that in order for a project to qualify, an applicant must meet all the definitions. That is plainly not the case. Moreover, it is certainly reasonable for the Secretary to have concluded that Mackinac Island State Park's golf course project could "facilitate development of small and emerging private business enterprises in rural areas."

Next, the plaintiff argues that he was improperly denied access to the "Project Selection Criteria" documents that were mentioned on his score sheet. He argues that pursuant to 7 C.F.R. § 1942.305(b)(3)[4], these documents are to be placed in every pre-applicant's file. The regulation contains no language to

---

**3.** Section 304 states:

> *Project.* For rural business enterprise grants, the result of the use of program funds, i.e., a facility whether constructed by the applicant or a third party from a loan made with grant funds, technical assistance, startup operating costs, or working capital. A revolving fund established in whole or in part with grant funds will also be considered a project for the purpose of Intergovernmental and Environmental Review under § 1942.310(b) and (c), of this subpart as well as the specific uses of the revolving funds. For television demonstration grants, television programming developed on issues of importance to farmers and rural residents. *Regional Commission grants.* Grants made from funds made available to FmHA or its successor agency under Public Law 103–354 by the Appalachian Regional Commission (ARC) or other Federal Regional Commissions designated under Title V of the Public Works and Economic Development Act of 1965. *Rural and Rural Area.* Any area other than a city or town that has a population of greater than 50,000 inhabitants and the urbanized area contiguous and adjacent to such a city or town according to the latest decennial census of the United States. *Rural Business Enterprise (RBE) grants.* Grants made to finance and facilitate development of small and emerging private business enterprises in rural areas. Grants are made from FmHA or its successor agency under

Public Law 103–354 funds under authority of the Consolidated Farm and Rural Development Act, as amended, Sec. 310B(c) (7 U.S.C.1932). *Small and emerging private business enterprise.* Any private business which will employ 50 or fewer new employees and has less than $1 million in projected gross revenues. *Technical Assistance.* A function performed for the benefit of a private business enterprise and which is a problem solving activity, such as market research, product and/or service improvement, feasibility study, etc. *Television demonstration program.* Grants made for television programming developed to demonstrate the effectiveness of providing information on agriculture and other issues of importance to farmers and other rural residents. Grants are made from FmHA or its successor agency under Public Law 103–354 funds under authority of the Consolidated Farm and Rural Development Act, as amended, Sec. 310B(j) (7 U.S.C. 1932).

> 7  C.F.R. § 1942.304 (emphasis added).

**4.** Rule 1942.305(b)(3) states:

> *Selection priorities.* The priorities described below will be used by the State Director to rate applications. Points will be distributed as indicated in paragraphs (b)(3)(i) through (iv) of this section. A copy of the score sheet should be placed in the case file for future reference.

> 7  C.F.R. § 1942.305(b)(3).

support the plaintiff's assertion that these documents are to be placed in every pre-applicant's file, or any evidence that "Project Selection Criteria" documents even exist. Instead, the regulation requires the "score sheets" to be place in the file. If the plaintiff is in fact referring to the score sheets, then his claim likewise would be rejected because the record is clear that the USDA sent the plaintiff a copy of his score sheets that indicated how many points the plaintiff received under each category.

Next, the plaintiff argues that the USDA abused 7 C.F.R. § 1942.305(b)(3)(i) [5] by using an improper printed form. The language of the regulation uses the word "primarily" and the USDA form contains the language "primary location." Presumably, the plaintiff advances this argument to establish that the USDA acted arbitrarily and capriciously. Changing a word on a form does not qualify as an arbitrary or capricious act.

Next, the plaintiff argues that funds granted to the Michigan Farmers Bureau funds for a Hog Cooperative that is contrary to 7 C.F.R. § 1942.307(a)(1). [6] He has not explained how the grant supports the production of "agricultural products," or offered any evidence or information suggesting that the applicant was running a "horizontally integrated livestock operation[ ]" in which agricultural products were produced. This claim, therefore, has no merit.

Next, the plaintiff argues that the Huron County MSU–Extension pre-application is contrary to 7 C.F.R. § 1942.305, a rule setting forth the eligibility and selection criteria for RBE grants. Once again, the plaintiff fails to show that the grant funds were used to grow, harvest or cultivate crops, as opposed to other activities that may assist in the development of local economies in farm communities, consistent with the congressional goal.

■ Next, the plaintiff argues RBE grants cannot be made to cooperatives. To support this argument, he does not point to any particular prohibition in a statute or regulation. Rather, he reasons that Congress specifically used the words "nonprofit institutions" for Rural Cooperative Development Grants under 7 U.S.C. § 1932(e)(1) [7], but in no place are these words even referenced in the RBE grant subsection under 7 U.S.C. § 1932(c) [8]. He

---

5. Rule 1942.305(b)(3)(i) provides:
   Population. Proposed project(s) will primarily be located in a community of (1) between 15,000 and 25,000 population—5 points, (2) between 5,000 and 15,000 population—10 points, (3) under 5,000 population—15 points.
   7 C.F.R. § 1942.305(b)(3)(i).

6. *See* footnote 2.

7. Subsection (e)(1) of Section 1932, Title 7, states:
   Rural cooperative development grants (1) Definitions In this subsection: (A) Nonprofit institution The term "nonprofit institution" means any organization or institution, including an accredited institution of higher education, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual.

7 U.S.C. § 1932(e)(1).

8. Subsection (c) of the statute provides:
   Rural business enterprise grants
   (1) Grants
   (A) In general
   The Secretary may also make grants, not to exceed $50,000,000 annually, to public bodies and private nonprofit corporation for measures designed to finance and facilitate development of small and emerging private business enterprises (*including nonprofit entities* ) or the creation, expansion, and operation of rural distance learning networks or rural learning programs that provide educational instruction or job training instruction related to potential employment or job advancement to adult students, including the development, construction or acquisition of land, buildings, plants, equipment, access streets and roads,

also contends that 7 C.F.R. § 1943.306 does not refer to "cooperatives" when setting forth the purpose of RBE grants, but a different grant program, the Rural Cooperative Development Grants described by 7 U.S.C. § 1932(e)(5) that is specifically designed for cooperative programs, clearly lists "cooperatives" within the program's purpose. Neither of these arguments has merit. Section 1932(c) of Title 7 does refer to "nonprofit entities," which can fairly be considered the same as nonprofit institutions. Furthermore, cooperatives are not anywhere specifically excluded from the RBE grant program. The fact that they may be included in other, overlapping programs does not make them ineligible for RBE grants. The practice of the Secretary to include cooperatives within the scope of applicants for RBE grants can be justified as a reasonable interpretation of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The plaintiff has failed to establish standing, and he has not offered sufficient evidence to demonstrate entitlement to equitable relief. The magistrate judge properly rejected the plaintiff's request for a preliminary injunction.

### C.

The plaintiff raises other objections in his "26 Detailed Objections, Issues & Argument with Supporting Exhibits to Magistrates [*sic*] Report & Recommendation" that the Court will now address. First, the plaintiff alleges that the Court has failed to rule on his own motion for summary judgment. However, there is no docketed summary judgment motion submitted by the plaintiff on the docket and,

therefore, the Court cannot render a decision on a motion that does not exist.

Next, the plaintiff argues that the Court has not ruled on his motion for reconsideration. The motion the plaintiff is likely referring to is his motion that seeks reconsideration of two orders entered by the magistrate judge on November 12, 2002. *See* dkt # 81. The first order by the magistrate judge denied the plaintiff's motion for sanctions. *See* dkt # 79. The plaintiff sought sanctions under Federal Rule of Civil Procedure 11 against the government's counsel for improper footnotes, improper spacing, and other similar perceived "violations" of the Local Rules. The second order by the magistrate judge denied the plaintiff's motion for reconsideration of an order which struck one of the plaintiff's filings. *See* dkt # 80. The motion for reconsideration lacks merit. The plaintiff has not demonstrated clear error on the part of the magistrate judge. Moreover, the plaintiff seeks in part reconsideration of a order denying a motion for reconsideration, and he has appealed the decision of the magistrate judge denying his motion for sanctions to the Sixth Circuit, which affirmed the magistrate judge's decision. On February 11, 2003, the Sixth Circuit filed an order denying the petitioner's application for a writ of mandamus. In the order, the court noted that the plaintiff argued that the magistrate judge improperly ruled on his motion for sanctions because the magistrate judge does not have authority to enter orders on motions for sanctions. The court of appeals, however, held that the petitioner was requesting sanctions that were non-dispositive and as such, the magistrate judge entered an order within his jurisdiction. The reconsideration motion will be denied.

---

parking areas, utility extensions, necessary water supply and waste disposal facilities, refinancing, services and fees.

7   U.S.C. § 1932(c) (emphasis added).

■ The plaintiff has also filed a motion for reconsideration of this Court's February 20, 2003 order denying the plaintiff's motion for a stay of proceedings pending review by the court of appeals. The Court will grant a motion for reconsideration if the moving party shows: (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.*, 177 F.Supp.2d 605, 624 (E.D.Mich.2001). Furthermore, the Local Rules provide that any "motion for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(g)(3). The issues raised in the plaintiff's motion for reconsideration are the same issues raised in his earlier motion for a stay. Essentially, the plaintiff requests that this Court stay the proceedings pending review by the Sixth Circuit. As the Court stated in its order denying the motion for a stay, there is no basis to stay the proceedings and, as noted above, the Sixth Circuit denied the plaintiff's petition for a writ of mandamus in an order dated February 11, 2003. The plaintiff, therefore, has not demonstrated that the Court was misled by a "palpable defect" and, accordingly, the Court will deny the plaintiff's motion for reconsideration.

Finally, the plaintiff has filed another motion for sanctions. The motion seeks sanctions against defendant's counsel for violating Federal Rule of Civil Procedure 11(b). This motion is nearly identical to the motion for sanctions that the magistrate judge decided earlier, discussed above. The government has filed an answer to the motion. The "violations" the plaintiff alleges that the government's counsel committed in this case do not rise to the level of conduct warranting a sanc-

tion under Rule 11. The government's counsel was merely advocating a position that in fact had merit and was supported by the record. Therefore, this motion also will be denied.

### III.

The plaintiff has failed to show that the defendant's actions were arbitrary or capricious; the Court finds, therefore, that the defendant is entitled to judgment affirming the decision of the Secretary of Agriculture as a matter of law. In addition, the plaintiff is not entitled to the equitable relief he seeks. The Court also finds that the Magistrate Judge has correctly characterized the plaintiff's claims and properly has applied the correct law to the facts as stated in the record.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation [dkt # 85] is **ADOPTED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt # 54] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for a preliminary injunction [dkt # 76] is **DENIED**.

It is further **ORDERED** that the plaintiff's motions for an evidentiary hearing [dkt # 75] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for reconsideration of the magistrate judge's order [dkt # 81] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for reconsideration of this Court's February 20, 2003 order denying plaintiff's motion for stay [dkt # 111] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for sanctions [dkt # 117] is **DENIED**.

It is further **ORDERED** that the following motions are **DISMISSED AS MOOT**: the plaintiff's motion to inform court of case record numbering [dkt # 62]; the plaintiff's motion for sanctions [dkt # 62]; the plaintiff's motion to strike defendant's motion for summary judgment [dkt # 62]; and the plaintiff's motion for evidentiary hearing and to expedite motion [dkt # 99].

It is further **ORDERED** that this cases is **DISMISSED WITH PREJUDICE**.